895 So.2d 701 (2005)
Kathryn McGUYER (Formerly known as Kathryn Collinsworth) Curatrix of the Interdict, Michael Leon Reeves, Plaintiff-Appellant,
v.
FIDELITY & CASUALTY COMPANY OF N.Y. (CNA Insurance), Defendant-Appellee.
No. 39,450-WCA.
Court of Appeal of Louisiana, Second Circuit.
March 2, 2005.
*702 James Johnson, Baton Rouge, for Appellant.
*703 Mayer, Smith & Roberts by Kim Purdy Thomas, Shreveport, for Appellee.
Before BROWN, WILLIAMS and GASKINS, JJ.
GASKINS, J.
Kathryn McGuyer, as curatrix of the interdict, Michael Leon Reeves, appeals from a judgment of the Office of Workers' Compensation (OWC), District 1-W, the Honorable Larry Butler presiding[1], denying Mr. Reeves' claims for additional medical expenses and for penalties and attorney fees. For the following reasons, we affirm the judgment.

FACTS
Michael Reeves was rendered a quadriplegic on February 21, 1984, after an industrial accident. Due to his condition, Mr. Reeves was interdicted; his sister Kathryn McGuyer is his curator. Mr. Reeves lives in Shreveport; Ms. McGuyer lives in Richardson, Texas.
Mr. Reeves' condition requires continuous nursing care. Fidelity and Casualty Company of New York (now CNA), the workers' compensation insurer of Mr. Reeves' former employer, is currently paying him $10,300.00 per month for his medically necessary expenses, an amount primarily dedicated to paying for the nursing care. CNA also pays Mr. Reeves an additional $1,000.00 per month, originally designated for living expenses, and $245.00 per week in workers' compensation benefits. Finally, Mr. Reeves receives $1,200.00 per month in social security benefits.
For many years after his injury, Mr. Reeves lived in his home in Minden where he was cared for by several nurse assistants and Royce Harper who was a licensed practical nurse. These nurses provided for Mr. Reeves' every need and monitored his medical condition. CNA paid for the modification of Mr. Reeves' home to provide for wheelchair access and provided him with a custom-built wheelchair. In the fall of 2002, Ms. Harper died. Susan Waites, Ms. McGuyer's daughter, then took over this position. Ms. Waites is a registered nurse.
In early 2004, Ms. McGuyer moved Mr. Reeves from his Minden home to an assisted living facility in Shreveport. She cited many reasons for the move, including proximity to caregivers, socialization for Mr. Reeves, and difficulty in maintaining and obtaining insurance on Mr. Reeves' home. Additionally, an unknown person had begun scratching on the windows of the home at night, frightening Mr. Reeves and his caregivers to the point where the nurses were reluctant to stay in the home. CNA did not oppose the move. The monthly payments to Mr. Reeves of $1,000 for living expenses from CNA, $1,200 from Social Security and the workers' compensation indemnity benefits essentially cover the $2,310 per month cost of the assisted living facility. CNA also directly pays for any medications needed to treat Mr. Reeves.
Nursing care for Mr. Reeves presently consists of a nurse supervisor and several certified nurse assistants. As the supervisor, Ms. Waites' tasks include hiring and training nurse assistants, record keeping, monitoring Mr. Reeves' condition, and being a liaison with Mr. Reeves' doctors. She also runs errands such as obtaining medicine from the pharmacy, seeing that equipment is maintained, shopping, and going to the cleaners. Mr. Reeves pays her $42,000 per year. She works about 32 hours per week and sees Mr. Reeves five times per week. She does not work a *704 regular shift. Ms. Waites estimated that she spends 2.5 hours per day on administrative duties, two hours of "away work" including picking up prescriptions, attending appointments and similar matters, and 2.5 hours of "hands-on" nursing care.
While Mr. Reeves lived in Minden, nursing assistants were paid between $6.50 and $7.50 per hour. According to Ms. McGuyer, at this rate of pay, the assistants did not tend to stay in the job for very long. The turnover in personnel was upsetting to Mr. Reeves. At about the time of the move to Shreveport, Ms. McGuyer began paying the assistants $10 per hour to ameliorate this problem.
Because of the salary increase, Ms. McGuyer asked for an increase in medical benefit payments from CNA. Another reason for the requested increase was to cover the fees of Mr. Reeves' certified public accountant, Edward LaBruyere, who is paid $500 per month to handle financial matters related to Mr. Reeves' care.
Ms. McGuyer also requested a special therapeutic mattress called a "V-CUE" bed to help prevent Mr. Reeves' recurring bouts with pneumonia. Mr. Reeves has difficulty swallowing and sometimes aspirates food or saliva which frequently causes pneumonia. The V-CUE bed, which costs between $30,000 and $40,000, provides chest percussion therapy that helps prevent these recurrent problems. The therapy can also be provided by trained therapists, but is difficult to administer.[2]
On October 22, 2003, the accountant, Mr. LaBruyere, sent Ms. McGuyer a letter detailing the expenses for Mr. Reeves' care in an effort to support her bid for an increase in medical payments from CNA. The letter specified the following costs:

 Annual
 CNA[3] Sitters @ $10 / Hr. $ 87,300.00
 Sitter Overtime 9,000.00
 Nursing Supervisor 42,000.00
 Soc. Sec. & Medicare 10,585.00
 Fed. & LA Unemployment 3,500.00
 Accounting Fees 6,000.00
 ------------
 Total $ 158,385.00
 ÷12
 ------------
 Estimated Cash Requirement
 per month $ 13,198.75

On January 13, 2004, the accountant prepared a second letter with a revised cost estimate which increased the sitters' fees to $87,600, reduced the overtime fee to $3,000, reduced the federal and state unemployment taxes, and increased Ms. Waites' salary to $50,000 per year. The estimated cash required per month to meet these expenses was $13,309.83.
The revised overtime estimate in the second letter was due to a more complete three-year review of the overtime paid as opposed to a several-month study underlying the first estimate. The record contains time sheets for the nurse assistants for the first four months of 2004. It appears that the assistants worked 73.5 hours of overtime for the first one-third of the year, which, when extended to an annual expenditure, would add up to under $1,500. In response to a question from the workers' compensation judge (WCJ) regarding the differences in the estimates in the two letters and the similarity in the totals, the accountant said that he did not remember why he listed Ms. Waites' salary *705 as $50,000.00 per year in the second estimate. He stated that the $42,000.00 per year figure in the first estimate was accurate.
CNA refused to pay the requested increase of approximately $3,000.00 per month in nursing fees or to provide Mr. Reeves with the special bed. Ms. McGuyer filed a disputed claim for compensation on behalf of Mr. Reeves in January 2004.
In conjunction with the claim, the parties deposed Dr. Phil Wang, a specialist in internal medicine who serves as Mr. Reeves' primary physician. Dr. Wang was unfamiliar with the payroll issues regarding Mr. Reeves' nursing care. The doctor explained that having trained personnel care for Mr. Reeves was important. He was not generally familiar with what services Ms. Waites was performing on a daily basis. Dr. Wang testified that the V-CUE bed was medically necessary for Mr. Reeves because it would improve his pulmonary status by reducing the recurrent aspiration of material causing Mr. Reeves to have pneumonia.
The deposition testimony of Dr. John Bruchhaus, Mr. Reeves' pulmonologist, was also introduced. He stated that Mr. Reeves needed either cardiopulmonary therapy twice per day with a specially trained therapist or the V-CUE bed. While he opined that either would be effective in treating Mr. Reeves, the doctor explained that the therapy provided by a respiratory therapist would be difficult for Mr. Reeves because of his positioning and his injury. This would require at least two people, and Dr. Bruchhaus was unaware of any nurse assistant currently providing this therapy.
He also explained that Mr. Reeves' pulmonary problems could be reduced if he were fed exclusively through a gastric tube, but that this would reduce his quality of life by taking away his enjoyment of food. The doctor said that aspiration pneumonia is a deadly disease and that when Mr. Reeves contracts the disease, treatment is complicated by his allergy to some antibiotics.
The matter was tried on June 2, 2004. In addition to the testimony of Ms. McGuyer, Ms. Waites, Mr. LaBruyere and the evidence discussed above, the court heard testimony from Donna Carlisle, the CNA case manager for Mr. Reeves. She explained that the $10,300 monthly payment for Mr. Reeves' care was the result of a 1997 negotiation between CNA and Mr. Reeves' family. Ms. Carlisle said that part of this figure included 10 hours per month of supervision of the staff by a registered nurse. According to Ms. Carlisle, she accepted the new $10 per hour pay rate for nursing assistants and the resulting $87,600 per year payroll. She indicated that the overtime payments to the nurse assistants had been significantly reduced since Mr. Reeves' move to Shreveport.
However, she opposed the salary paid to Ms. Waites and the request for accounting fees. Ms. Carlisle explained that there was no need to pay Ms. Waites $27 per hour to pick up prescriptions, go to the grocery store, get laundry and various other administrative functions. She also said that unlike Ms. Waites, Mr. Reeves' previous nurse "basically had a shift that she did." Ms. Carlisle stated that in her 15 years experience, she had never seen accounting fees related to the diagnosis or treatment of a work-related injury. She also said that she never saw a prescription from Dr. Bruchhaus for the V-CUE bed.
At the conclusion of the trial, the workers' compensation judge (WCJ) expressed dissatisfaction with the cost estimates by the accountant. The court said:

*706 First off, as to the additional funds, I was very, very disappointed in a CPA coming in here trying to play number games with me. I didn't believe his story about why the numbers didn't match. I asked him why there was such a similarity in the bottom line and a disparity in the numbers in the column. And I didn't believe what he told me. I believe he took the bottom line and worked up. I didn't like his answer.
The way it appears to me what was worked out in 1997 that it was determined there was X dollars to care for Mr. Reeves, that money is deemed filled with [sic]. No disparity on Ms. Waites. I think she is doing a good job. She is doing a job that a family member ought to be doing. A lot of it is a job that the curator ought to be doing. It's part of the things that the curator gets paid to do, and a family member does not get paid to do but is supposed to do.
There is enough money there. There is $11,300 a month for medical for Mr. Reeves. Taking the CPA's own numbers and reducing them to realistic numbers, there is enough money there. I came up with $11,400 a month pays the medical bills. Within $100 a month of what's there. So I'm not going to award any additional funds for meds.
The WCJ found that according to the evidence, the V-CUE bed was medically necessary and ordered CNA to provide it. The WCJ denied penalties and attorney fees. From the judgment in accordance with these reasons, the plaintiff now appeals.

MEDICAL EXPENSES
On appeal, Mr. Reeves argues that the trial court erred in denying him an increase in medical payments. This argument is without merit.
Typically, the law at the time of a claimant's work-related injury governs because it establishes the rights and duties of the parties with regard to entitlement to compensation benefits. Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992); Gay v. Georgia Pacific Corporation, 32,653 (La.App.2d Cir.12/22/99), 754 So.2d 1101. At the time of Mr. Reeves' 1984 accident, La. R.S. 23:1203 provided:
A. In every case coming under this Chapter, the employer shall furnish all necessary medical, surgical, and hospital services, and medicines, or any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. All such services and treatment shall be performed at facilities within the state when available.
The plaintiff must prove the necessity of the treatment and the causal connection between the treatment and the employment-related accident by a preponderance of the evidence. The issues of necessity of treatment and causal relationship are questions of fact. Accordingly, the applicable standard of review regarding the hearing officer's findings is the manifest error-clearly wrong standard. Weeks v. Angelo Iafrate Construction Company, 37,255 (La.App.2d Cir.6/25/03), 850 So.2d 966.
In order for an appellate court to reverse a trial court's finding of fact, the appellate court must find that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong or manifestly erroneous. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences *707 of fact should not be disturbed upon review where conflict exists in the testimony. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, through Department of Transportation and Development, 617 So.2d 880 (La.1993).
Under La. R.S. 23:1203, medical payments are separate and distinct from compensation indemnity benefits. Walker v. High Tech Refractory Services, Inc., XXXX-XXXX (La.App. 1st Cir.6/25/04), 885 So.2d 1185. Thus, the amount of the workers' compensation indemnity benefits paid by CNA to Mr. Reeves is not included in the amount of medical payments owed by CNA under La. R.S. 23:1203.
CNA has been paying $1,000 per month in living expenses to allow Mr. Reeves to remain in his home in Minden. Mr. Reeves' doctors were satisfied with the level of his care when he lived in his own home. Other factors made it impractical for Mr. Reeves to remain at his home in Minden. CNA did not oppose the move to the assisted living facility. The plaintiff stated that the $1,000 per month payment has been applied to the $2,310 per month required for Mr. Reeves to stay at the assisted living facility. However, the plaintiff did not seek an increase from CNA to cover the entire amount.
The WCJ considered this payment to be in the nature of a necessary expense and applied the expenditure to the amount available to pay for Mr. Reeves' nursing expenses. Because this payment is not an indemnity benefit, the WCJ did not err in finding this to be a payment for medical expenses. Therefore, as noted by the WCJ, CNA is currently paying $11,300 per month in medical payments.
We have reviewed the record and find that the WCJ's estimate of $11,400 per month to satisfy Mr. Reeves' expenses for medical services is accurate. Mr. Reeves needs nursing care every hour of every day at $10.00 per hour, with a fixed cost of $87,600.00 per year (365 days x 24 hours x $10 per hour). Some nurse assistant overtime is contemplated due to unavoidable factors in his care.
Ms. Waites earns $42,000.00 per year. The trial court did not state on the record what portion of her salary was not to be included in CNA's obligation, but the court clearly reduced the obligation by some amount for duplication of services. Ms. Waites testified that she spends the majority of her day performing administrative functions and running errands rather than providing nursing care to Mr. Reeves. At least some of the nursing care is duplicated by this arrangement.
Social Security and Medicare payments for the employees adds $10,651.50 (taking the average of the supplied numbers for purposes of this calculation) per year to the cost of Mr. Reeves' care. Unemployment benefit payments add another $2,950.00 per year (again, taking the average of the supplied figures). There was no dispute regarding these figures.
The WCJ made no provision for accounting fees in its ruling. These fees are clearly not necessary medical services or necessary nonmedical treatment in this situation and so were properly not included in CNA's obligation under La. R.S. 23:1203.
As stated by the WCJ, $11,300 is currently available for Mr. Reeves' necessary medical services. We note that due to the variances in expenses and wages from year to year, the exact amount needed for Mr. Reeves' care cannot be determined with a high degree of specificity. Given that neither this court's estimate nor the WCJ's is precisely accurate due to the uncertainty *708 of the underlying figures, we affirm that portion of the judgment finding that CNA's current payment of $11,300 per month satisfies its present obligation under La. R.S. 23:1203.

PENALTIES AND ATTORNEY FEES
The plaintiff argues that the trial court erred in refusing to award penalties and attorney fees for the defendant's delay in providing the V-CUE bed. This argument is without merit.
By contrast to the usual rule in workers' compensation cases, the law regarding penalties and attorney fees in effect at the time of the withholding of benefits is controlling. Gay v. Georgia Pacific Corporation, supra. The denial of the bed occurred in 2004. Therefore, the current version of La. R.S. 23:1201 applies, which provides in part:
E. Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.
F. Failure to provide payment in accordance with this Section... shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.... Penalties shall be assessed in the following manner:
...
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
The WCJ has great discretion in finding that penalties and attorney fees are due, and this discretion will not be overturned absent manifest error. Harvey v. B E & K Construction, 30,825 (La.App.2d Cir.8/19/98), 716 So.2d 514.
Although Drs. Bruchhaus and Wang opined that the V-CUE bed was a medical necessity, Dr. Bruchhaus also said that manual respiratory therapy combined with a bed that had certain features would be adequate for Mr. Reeves' pulmonary treatment. Evidently, the nurse assistants were at some point ordered to perform a respiratory therapy regimen on Mr. Reeves, and the capabilities of Mr. Reeves' current bed were not well explored in the doctors' depositions. On this record, the claim for the bed was reasonably controverted and the WCJ's decision denying penalties and attorney fees is not clearly wrong.

CONCLUSION
For the above reasons, we affirm the decision of the OWC denying an increase in medical expenses and granting the V-CUE bed to Mr. Reeves. We also affirm that portion of the judgment denying penalties and attorney fees.
AFFIRMED.
NOTES
[1] This information is provided, and this opinion is published, per La. R.S. 23:1310.5(F).
[2] In her petition, Ms. McGuyer also requested a motorized scooter. Mr. Reeves' physicians deemed this item not to be medically necessary. The workers' compensation judge denied the request. That portion of the judgment has not been contested on appeal.
[3] In this context, "CNA" means "certified nurse assistant," and does not refer to the defendant.