935 So.2d 293 (2006)
Catherine TAYLOR, Plaintiff-Appellant
v.
HOLLYWOOD CASINO, Defendant-Appellee.
No. 41,196-WCA.
Court of Appeal of Louisiana, Second Circuit.
June 28, 2006.
*295 Ronald F. Lattier, Curtis R. Joseph, Jr., Shreveport, for Appellant.
William T. Allison, Shreveport, for Appellee.
Before BROWN, STEWART, and GASKINS, JJ.
BROWN, Chief Judge.
This case arises out of a workers' compensation claim against Hollywood Casino Shreveport ("Hollywood").[1] Claimant, Catherine Taylor, alleged that she developed carpal tunnel syndrome while employed as a cocktail waitress at Hollywood from 2000 to 2003. After Hollywood refused her demand for workers' compensation benefits, both indemnity and medical, Ms. Taylor filed a formal claim for compensation in August 2003. A workers' compensation judge ("WCJ") heard the case and awarded the claimant both indemnity and medical benefits as well as penalties and attorney fees. Hollywood now appeals. For the reasons set forth below, we affirm, reverse the penalty award in part, and render.[2]

Discussion
On appeal, Hollywood urges that the WCJ erred in finding that Ms. Taylor carried her burden of proving that she suffered from an occupational disease related to her work at Hollywood. In addition, Hollywood asserts that the WCJ erred in awarding indemnity benefits, penalties and attorney fees and in calculating penalties.
In Lee v. Schumpert, 36,733 (La. App.2d Cir.01/29/03), 836 So.2d 1214, 1220-21, this court described the burden of proof for a claimant asserting an occupational disease with the following language:
The claimant asserting an occupational disease must prove, by a preponderance of evidence, a disability related to an employment-related disease, that it was contracted during the course of employment, and that it is the result of the work performed. The causal link between the claimant's occupational disease and the work-related duties must be established by reasonable probability. The claimant will fail if there is only a possibility that the employment caused the disease, or if other causes not related to the employment are just as likely to have caused it. Expert testimony is required to support a finding of an occupational disease. (Citations omitted).
*296 In Fite v. Louisiana Title Company, 02-2607 (La.06/27/03), 852 So.2d 983, the supreme court concluded that medical reports may serve as the required expert testimony for proof of disputed medical matters.
Whether the claimant has carried her burden of proof and whether testimony is credible are questions of fact to be determined by the workers' compensation judge. Lewis v. Chateau D'Arbonne Nurse Care Center, 38,394 (La.App.2d Cir.04/07/04), 870 So.2d 515. Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. Culotta v. A.L. & W. Moore Trucking Company, 35,344 (La.App.2d Cir.03/05/03), 839 So.2d 1063, writ denied, 03-0998 (La.05/30/03), 845 So.2d 1052.
When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel its own inferences and evaluations are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). The manifest error standard applies even when the workers' compensation judge's decision is based upon written reports, records or depositions. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992).
Catherine Taylor began working as a cocktail waitress at Hollywood in December 2000. Among other things, her job required her to carry trays holding up to 15 glasses, each described as very thick and heavy. Ms. Taylor indicated that she carried the trays on her fingers with her palm facing up and with her wrist hyperflexed. Ms. Taylor testified that she had worked in the same capacity for another casino prior to working for Hollywood but had never suffered symptoms of carpal tunnel syndrome. Ms. Taylor testified that sometime around February 2002, she began to suffer pain in her wrists. Subsequently, the symptoms spread and Ms. Taylor began to experience numbness and tingling in her fingers.
On August 27, 2002, Ms. Taylor saw Dr. Michael Acurio, an orthopedic surgeon, complaining of neck pain, numbness and parasthesias into both hands, and occasional pain down her upper extremities. The medical records were submitted into evidence, and reflect that Dr. Acurio was made aware of Ms. Taylor's work duties at Hollywood. In the "impression" section of the medical record, Dr. Acurio noted degenerative disease in Ms. Taylor's cervical spine. Later records from 2002 do not reflect complaints of pain in her hands, although she did complain of pain in her neck and down her left arm.
In January 2003, Ms. Taylor reported to Dr. Acurio that she was having numbness and parasthesias in both hands. The doctor's report states that Ms. Taylor said she had been having this pain for approximately two years. Dr. Acurio examined her and reported that she had a positive Phalen's test for carpal tunnel syndrome. Dr. Acurio gave Ms. Taylor carpal tunnel splints to wear and ordered nerve conduction tests. The tests were performed by Dr. Eric Bicknell in January of 2003; the impression section of this test report states that Ms. Taylor had carpal tunnel syndrome, mild on the right and minimal on the left extremity. On March 11, 2003, Dr. Acurio formally diagnosed Ms. Taylor with bilateral carpal tunnel syndrome and recommended surgery. Ms. Taylor testified that she told her supervisor and the beverage manager at Hollywood about this recommendation, but her employer took no action.
Ms. Taylor testified that on March 17, 2003, she nearly dropped her tray and had *297 to leave work due to severe pain. That was her last complete day of work for Hollywood. Before leaving that day, Ms. Taylor met with Hollywood's risk manager, John Gallagher. Ms. Taylor testified that she told Gallagher that she needed carpal tunnel surgery and she signed a medical release form. Gallagher concluded that Ms. Taylor's claim had prescribed because she had symptoms of carpal tunnel for more than six months prior to making the claim.
Ms. Taylor testified that she explained her job duties to Dr. Acurio during the course of her treatment. On March 19, 2003, Dr. Acurio wrote a "To Whom It May Concern" letter stating in part:
Ms. Catherine Taylor is a patient of mine who is employed at Hollywood Casino. In her job capacity, she does significant repetitive motion with her hands. She suffers from carpal tunnel which I feel is related to her repetitive motion.
Ms. Taylor delivered the letter to Gallagher. Dr. Acurio's medical record from March 19, 2003, states that Ms. Taylor had decided to proceed with surgery; the note does not mention whether Ms. Taylor was able to work.
On March 24, 2003, Ms. Taylor had carpal tunnel surgery on her left arm, and then on April 14, 2003, she had surgery on her right arm. On June 2, 2003, Dr. Acurio restricted Ms. Taylor from working "for four more weeks." Nevertheless, Ms. Taylor attempted to return to work at Hollywood on June 9, 2003, but was unable to complete a full day because of wrist pain. Ms. Taylor did not attempt to work at Hollywood again.
On June 16, 2003, Ms. Taylor went to work in the office of another casino. She later became a bartender at that casino. Ms. Taylor testified that she continued to have some pain in her wrists through the time of trial in April 2004.
Prior to commencing employment with Hollywood, Dr. Acurio's medical records show that Ms. Taylor suffered from degenerative disc disease which sometimes caused her pain in her arms and hands. However, Dr. Acurio's reports, particularly when coupled with the nerve conduction tests, established that Ms. Taylor also suffered from carpal tunnel syndrome. Although the disc disease may have manifested itself in ways similar to carpal tunnel syndrome both before and after Ms. Taylor's carpal tunnel surgery, the medical evidence proving that the claimant had carpal tunnel syndrome is undisputed. Further, Dr. Acurio's records indicate that he was able to distinguish the symptoms of both conditions. As late as November 2003, Dr. Acurio noted that Ms. Taylor's carpal tunnel symptoms had been relieved and that the bulk of her pain was related to her disc disease. Further, Ms. Taylor's own testimony showed that she was disabled by carpal tunnel syndrome from March 17, 2003, through at least June 9, 2003.
The WCJ had the benefit of all of Ms. Taylor's medical records and heard extensive cross-examination of her regarding her degenerative disc condition and how that condition affected her prior to and after her carpal tunnel surgery. The WCJ found that this evidence was sufficient to prove that Ms. Taylor's carpal tunnel syndrome was contracted while she worked at Hollywood and that it was the result of her work duties there. We detect no manifest error in that finding. The medical records show that she complained of arm pain in late 2000 and that her doctor attributed the pain at that time to her degenerative disc condition. Her complaints of arm, wrist and hand pain subsided until August 27, 2002, long after she had commenced *298 working at Hollywood, and only in 2003 was Ms. Taylor diagnosed with carpal tunnel syndrome. The evidence as a whole supports the WCJ's conclusion that Ms. Taylor's condition resulted from her employment and duties as a cocktail waitress at Hollywood.
After finding that Ms. Taylor had satisfied her burden of proving that she suffered from a compensable occupational disease, the WCJ awarded Ms. Taylor temporary total disability ("TTD") benefits from March 17, 2003, the day she stopped working due to pain, through June 9, 2003, the day she attempted to return to work at Hollywood. On appeal, Hollywood contests Ms. Taylor's proof that she was entitled to these benefits.
In Collins v. Patterson Drilling, 39,668 (La.App.2d Cir.05/11/05), 902 So.2d 1264, 1268, this court explained how a claimant may obtain an award of TTD benefits:
To obtain an award of TTD, a claimant must prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment. La. R.S. 23:1221(1)(c). This is the standard of proof which a claimant must satisfy when he files a disputed claim form seeking an award of TTD benefits after the employer or insurer terminates voluntary payments of TTD. (Citations omitted).
To prove a matter by clear and convincing evidence, as required to establish entitlement to TTD benefits, means to demonstrate that the existence of a disputed fact is highly probable, i.e., much more probable than its nonexistence. Hammock v. Weyerhaeuser, 40,464 (La.App.2d Cir.12/14/05), 917 So.2d 733.
Ms. Taylor testified that she was forced to leave work due to carpal tunnel pain on March 17, 2003, and that she underwent the first of two surgeries one week later. Ms. Taylor underwent the second surgery some three weeks after that, and in June, Dr. Acurio ordered Ms. Taylor to remain off work "for four more weeks." Although there is no previous order in the record from Dr. Acurio restricting Ms. Taylor from working, the doctor's use of "more" in his June order indicates Ms. Taylor's inability to work during her convalescence from the carpal tunnel surgeries. On this record, the WCJ was not manifestly erroneous in awarding Ms. Taylor TTD benefits for the period designated.
Finally, Hollywood challenges Ms. Taylor's entitlement to statutory penalties and attorney fees. The penalty and attorney fee provisions in the workers' compensation law were revised by Act 1204 of 2003, effective August 15, 2003. In contrast to the usual rule in workers' compensation cases, the law regarding penalties and attorney fees in effect at the time of the withholding of benefits is controlling. McGuyer v. Fidelity & Casualty Company of New York, 39,450 (La.App.2d Cir.03/02/05), 895 So.2d 701. In the instant case, both the injury and the withholding of benefits occurred under pre-amendment law, so the pre-amendment law applies.
La. R.S. 23:1201(F) formerly provided:
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a *299 maximum of two thousand dollars in the aggregate for any claim....
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
Statutory provisions permitting the assessment of penalties and attorney fees for nonpayment of workers' compensation benefits are penal in nature and must be strictly construed. Lewis, supra. The WCJ has great discretion in awarding or denying penalties and attorney fees. Thomason v. Wal-Mart Stores, Inc., 37,520 (La.App.2d Cir.09/04/03), 852 So.2d 1283, writ denied, 03-2774 (La.12/19/03), 861 So.2d 573. The WCJ's decision concerning whether to assess statutory penalties and attorney fees will not be disturbed absent an abuse of discretion. Lewis, supra. The provisions of La. R.S. 23:1201(F) provide for multiple penalties for multiple violations of compensation and medical benefits. Fontenot v. Reddell Vidrine Water District, 02-0439 (La.01/14/03), 836 So.2d 14.
Hollywood urges that Ms. Taylor never presented the casino with a demand for indemnity benefits or any medical bills and thus no award of penalties or attorney fees was warranted. However, both Ms. Taylor and Hollywood's risk manager testified that Ms. Taylor informed Hollywood on March 17, 2003, that she had carpal tunnel syndrome that she attributed to her work at Hollywood and that the condition both prevented her from working and required surgery for correction. Hollywood determined that the claim was prescribed, and formally advised Ms. Taylor of that conclusion by letter on the day that she notified the casino of her claim. After Hollywood rejected the claim, Ms. Taylor supplied Hollywood with the letter from Dr. Acurio attributing her carpal tunnel syndrome to her employment, but Hollywood made no response. Hollywood's assertion of prescription was wrong as a matter of law; prescription did not commence to run until the day Ms. Taylor became disabled from working. Bynum v. Capital City Press, Inc., 95-1395 (La.07/02/96), 676 So.2d 582; Lee, supra. The WCJ was not manifestly erroneous in concluding that Hollywood did not reasonably controvert Ms. Taylor's claim for medical and indemnity benefits. We detect no error in the WCJ's decision to award penalties and attorney fees.
However, the amount of the penalty awarded by the WCJ for the withholding of indemnity benefits cannot stand. As this court recognized in Player v. International Paper Company, 39,254 (La. App.2d Cir.1/28/05), 892 So.2d 781, La. R.S. 23:1201(F) allows multiple penalties but does not contemplate that a claimant can be awarded a separate penalty for each missed week of indemnity benefits as occurred in the instant case. We amend the award of penalties for missed indemnity benefits to $2,000, the maximum allowed under these facts. Hollywood has not shown manifest error in the WCJ's additional award of a $2,000 penalty for failure to pay medical benefits or the $3,000 attorney fee award.

Conclusion
For the above reasons, the judgment of the WCJ is amended to reduce the award of statutory penalties for failure to pay indemnity benefits to $2,000. In all other respects, the judgment of the WCJ is affirmed. Costs of this appeal are assessed to appellant, Hollywood Casino.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
NOTES
[1] Hollywood is now operating as the El Dorado Resort Casino Shreveport ("El Dorado").
[2] The WCJ concluded that Ms. Taylor had proven that she suffered from an occupational disease that resulted from her work at the casino. The WCJ found that Taylor earned $480 per week and was entitled to indemnity benefits from March 17, 2003, through June 9, 2003, a total of $3,840. The WCJ then ordered Hollywood to pay Ms. Taylor's medical bills from January 3, 2003, until June 9, 2003, the bills that the WCJ attributed solely to Ms. Taylor's occupational disease.

Finally, the WCJ found that Hollywood arbitrarily and capriciously denied Ms. Taylor's claim and awarded her a $12,000 penalty for the failure to pay indemnity benefits, a $2,000 penalty for the failure to pay medical benefits, and attorney fees in the amount of $3,000. On May 20, 2004, the WCJ signed a judgment in accordance with these reasons. Hollywood then took a suspensive appeal. In September 2004, Hollywood sought protection under Chapter 11 of the Bankruptcy Code, and this appeal was stayed. In November 2005, Hollywood notified the OWC that the stay had been lifted and the case is now before this court for review.