Judgment rendered August 9, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,231-WCA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

DONALD JENSON                                 Plaintiff-Appellee

versus

BERRY GLOBAL GROUP, INC.                      Defendant-Appellant

* * * * *

Appealed from the
Office of Workers' Compensation, District 1-E
Parish of Ouachita, Louisiana
Trial Court No. 20-00922

Brenza Irving Jones
Workers' Compensation Judge

* * * * *

PARKER & LANDRY, LLC                          Counsel for Appellant
By:  Michael E. Parker
     Taylor S. Madison-Domingue

JAMES R. HERRON                               Counsel for Appellees,
                                              Rosie Jenson and the
                                              Estate of Donald Jenson

* * * * *

Before PITMAN, STONE, and ELLENDER, JJ.

ELLENDER, J., concurs in part and dissents in part with written reasons.

**PITMAN, C. J.**,

Defendant Berry Global Group, Inc., appeals the decision of the Office of Workers' Compensation Judge ("WCJ"), who found that Plaintiffs Rosie Jenson ("Rosie") and the Estate of Donald Jenson are entitled to judgment finding that Rosie's now-deceased husband, Donald Jenson ("Donald"), was involved in a work-related accident; was entitled to payments for temporary total disability ("TTD") benefits; did not commit fraud so that payments were precluded; that Defendant was not entitled to credit for benefits Donald's medical insurance paid; and that Plaintiffs are entitled to judgment awarding penalties and attorney fees. For the following reasons, we affirm.

## FACTS

On September 10, 2019, Donald, while operating a forklift on the job as a senior operator for Defendant in Ouachita Parish, was injured as he climbed down from the forklift and slipped on resin on the floor. As he fell, he struck the back of the forklift, causing injury to his right side, back, knee and thigh. He reported the incident and his injury to the supervisor, Damien Smith, who completed an accident/injury notice in accordance with company policy. Smith wrote that Donald slipped on the resin, injured the right side of his body and his hip and that the nature of the injury was a sprain or strain. Smith also obtained the surveillance tape of the alleged accident and, from the tape, witnessed Donald's slip on the resin.

Donald went to Saint Francis Occumed the day after the alleged accident and complained of right hip pain. When asked, he denied having

any prior medical history regarding this pain. St. Francis released him to return to work without any restrictions.

Later that day, Donald followed up with his primary care physician, Dr. Kerry Anders, and complained of right hip/leg pain. Dr. Anders suspended him from work for a week. On September 20, 2019, Donald returned to Dr. Anders, who referred him for an evaluation to Dr. Sidney Bailey, an orthopedist. He remained off work during this period. The evaluation took place on October 17, 2019, and Donald was asked again about prior medical history. He denied ever having any medical history related to his complaint. An MRI was conducted, and Dr. Bailey opined that Donald suffered from degenerative disc disorder and recommended he undergo physical therapy. His medical report indicates that among other things wrong with his spine, there was "Bone marrow edema suggesting an acute fracture of the right pedicle."

On October 28, 2019, Donald was referred by Dr. Anders to Dr. Marshall Cain at the Cain Neurosurgery Clinic. Dr. Cain's report indicates that Donald was still suffering back and leg pain but that he had not done any conservative therapy, physical therapy or pain management. Donald reported that his employer would not pay for physical therapy, and he denied any significant past medical history. Dr. Cain's report further indicates that there was evidence of pedicle fracture at L5 and spondylosis and disc disease at L3-4 and L5-S1. It stated, "At this time, he cannot work and he is to be off work." Dr. Cain recommended physical therapy and believed Donald would heal with time and conservative treatment.

On February 7, 2020, Donald filed a disputed claim with the Office of Workers' Compensation ("OWC") and asserted that he suffered a major

disability and impairment in the accident, which precluded him from resuming his pre-accident employment as senior forklift operator. He also asserted that Defendant acted unreasonably and in an arbitrary and capricious manner in denying his claim for weekly workers' compensation benefits and medical treatment associated with the injury sustained while on the job.

On July 2, 2020, at Defendant's request, Donald went to Dr. Gordon Mead for an independent medical examination ("IME") and evaluation. Once again, when asked, Donald denied any significant medical history related to his injury. Dr. Mead considered Donald capable of returning to restricted duty work activities; however, after he became aware of Donald's prior medical history, he changed his opinion and issued another report finding that Donald suffered from preexisting degenerative disc disorder. Despite this disorder, Dr. Mead opined that Donald was suffering from the injuries sustained in the work-related accident, specifically, nerve root impingement from lumbar disc protrusion combined with spinal stenosis. He recommended physical therapy for a 6- to 12-week period. He stated that if Donald did not improve, then spinal injections would be indicated, or possibly even lumbar surgery. He stated that he did not think Donald was capable of returning to the job described due to the limitation of repeated bending and heavy lifting.

As a result of the alleged dispute between the doctors, Defendant requested that the WCJ appoint a physician to conduct another IME. Donald objected to yet another physician examining him because he had already seen Dr. Mead, who had produced the second medical opinion on his condition.

3

On March 8, 2021, a Zoom hearing was held on the motion to appoint an IME, and it was revealed that Donald had been in an accident on a 4-wheeler the previous week and died from his injuries on March 4, 2021. Therefore, the motion for the IME was declared moot. Rosie (Donald's wife) was substituted as plaintiff and representative of her husband's estate. The trial which was originally set for May 2021 was continued.

The trial was held on January 20, 2022. Smith, Donald's supervisor, testified and produced the video of Donald's accident. The first time the WCJ viewed the video, she did not even see when Donald slipped. However, after the second viewing, she did see his foot slip and then saw him limp away from the forklift. Smith testified that Donald always walked with a small limp. He also stated that while he did not recall exactly, he did not think Donald ever returned to work after the incident at the forklift.

Rosie testified and explained that Donald was born with one leg shorter than the other and that was the reason he always walked with a limp. She also testified that after the accident, he complained of pain in his right side and that certain doctors suggested physical therapy, but that neither Defendant nor Donald's own insurer, Blue Cross Blue Shield of Louisiana, would pay for it. She also stated that Donald had been involved in a motor vehicle accident 10 or 12 years prior to the forklift injury and that his main injury in that accident was to his right knee. At that time, Donald was off work for three months recuperating.[1]

The attorneys introduced evidence at the hearing, including Dr. Cain's notes, which were introduced because he had never been deposed, and

_____

[1] In Donald's deposition, he testified that he was off work for six months after an accident during that time period.

4

Dr. Mead's deposition. A request for penalties, attorney fees and a list of costs provided by Plaintiffs' attorney was made. Defendant introduced Dr. Anders's records and other pertinent medical records and cross-examinations of the physicians. The attorneys were given the opportunity to make a closing argument, and Defendant's attorney raised the issue of Donald's potential fraud in failing to tell any physician about the car accident he had 10 to 12 years before. Defendant claimed this was relevant because Donald had an MRI on his back at that time, yet he denied any history of back problems prior to September 10, 2019.

The WCJ took the matter under advisement and issued an oral ruling on March 17, 2022. In a telephonic hearing, the WCJ found that Donald had an accident arising out of and in the course of his employment with Defendant. She also found that Donald's average weekly wage had been stipulated at $1,393.48 per week. She stated that the video evidence provided proof of the accident and that the medical evidence supported his contention that he was in pain and unable to return to work in his capacity as a senior forklift operator. Physical therapy had been recommended. The medical advice given by the various doctors showed he was unable to return to work from the date of the accident up until the date of his death. Therefore, the WCJ found Donald was entitled to medical and TTD benefits.

The WCJ further found that although Defendant had asked to be reimbursed for benefits paid by Donald's health insurance company, the record was devoid of sufficient evidence to grant the request. In regard to the issue of fraud, she found that a three-prong test applied before a finding of fraud could be made, i.e., there had to be a showing of a false statement or misrepresentation, willfully made, for the purpose of obtaining workers'

5

compensation benefits. She did not find that he had made any such false statements and stated that Defendant had failed to meet its burden of proof of fraud under La. R.S. 23:1208.

On April 28, 2022, the judgment was rendered decreeing that Donald was entitled to 77 weeks of TTD benefits in the amount of $52,976, to be paid to Plaintiffs. A $2,000 penalty for failure to pay indemnity benefits on Donald's behalf and an additional $2,000 penalty for failure to provide medical treatment on Donald's behalf were assessed to Defendant, with both amounts being payable to Plaintiffs. An attorney fee of $10,000 was awarded to Plaintiffs' attorney James R. Herron. All costs, including, but not limited to, medical records charges, expert witness fees and litigation expenses, except as provided by law, were assessed against Defendant in the total amount of $4,980.98.

Defendant appeals the judgment of the WCJ.

## DISCUSSION

### *The Accident*

Defendant argues that the WCJ committed manifest error in finding that Plaintiffs met their burden of proof that Donald had an accident on September 10, 2019, as that term is defined in La. R.S. 23:1021(1). It contends that the evidence, specifically the video footage of the alleged accident, was inconclusive. It points out that when the WCJ viewed the evidence, she did not even see the accident when it supposedly occurred, because the slip of the foot was so minor that a true fall did not result. It further contends that the fall involved was no more significant than a person sitting in a chair. Donald did not flail his arms or fall to the ground but simply leaned against the forklift. His limping away from the scene was

6

easily explained by the fact that he had always limped as a result of one leg being shorter than the other. It argues that the WCJ's decision must be reasonable based on the evidence, and the evidence presented showed that Donald had degenerative disc disease, had suffered from it for many years and had been known to wear a back brace to work. For these reasons, it further argues that Donald's injury, if any, was more reasonably related to a deterioration or progressive degeneration, and Plaintiffs did not meet their burden of proof showing Donald sustained an injury as a result of a work-related accident.

Plaintiffs argue that the video of the accident shows Donald exiting the forklift, slipping and, obviously, dropping a short distance out of view of the camera, then limping away. They assert that the testimony of Smith verifies that he believed Donald suffered an injury from a work-related accident. The physicians he saw all stated that they considered his pain was caused by a work-related injury.

An employee is entitled to workers' compensation benefits if he receives personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031(A). An employment-related accident is an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. La. R.S. 23:1021(1). The claimant has the burden of establishing his disability and its causal connection to the work-related accident by a preponderance of the evidence. *Woodard v. Brookshire Grocery Co.*, 54,574 (La. App. 2 Cir. 8/10/22), 345 So. 3d 439, *writ denied*, 22-01360 (La. 11/16/22), 349 So. 3d 1001.

7

Factual findings of a WCJ are subject to the manifest error standard of review; therefore, in order for a reviewing court to reverse a WCJ's factual findings, it must find that a reasonable factual basis does not exist and the record establishes that the factual findings are clearly wrong. *Lafayette Bone & Joint Clinic v. Louisiana United Bus. SIF*, 15-2137 (La. 6/29/16), 194 So. 3d 1112. Under the manifest error rule, the reviewing court does not decide whether the WCJ was right or wrong but only whether its findings are reasonable. *Elmuflihi v. Cent. Oil & Supply Corp.*, 51,673 (La. App. 2 Cir. 11/1/17), 245 So. 3d 155, *writ denied*, 17-2009 (La. 2/23/18), 237 So. 3d 1189. The reviewing court is not permitted to reweigh the evidence or reach its own factual conclusions from the evidence. *Id.* The manifest error standard applies even when the WCJ's decision is based on written reports, records or depositions. *Bruno v. Harbert Int'l., Inc.*, 593 So. 2d 357 (La. 1992); *Woodward*, *supra*.

Based on the review of the video, the testimony presented at the hearing and all of the written reports, records and depositions, a reasonable factual basis exists for the WCJ's ruling. For these reasons, this assignment of error is without merit.

### *Fraud*

Defendant contends that the WCJ erred in finding that Donald did not commit fraud and thereby forfeit his right to workers' compensation benefits because he made false statements for the purpose of obtaining benefits or payment when he denied ever having injured his back. It asserts that Donald gave false statements to the treating physicians in this case and that he consistently denied having had back problems that were related to his degenerative back disease or a prior accident which occurred in 2008. It

contends that in his deposition, Donald reported he had been in an accident 10 to 12 years prior to the accident at issue in this case and that he suffered a low-back injury, which resulted in him being placed on a no-work status for approximately six months. It argues that the false statements made to the physicians were not inconsequential and were made because Donald was hoping to deceive the court into awarding him benefits.

Plaintiffs argue that Donald did not willfully make any false statements in an effort to obtain workers' compensation benefits. They assert that the alleged false statements made to physicians were check marks Donald made by the word "no" under the medical history section of the St. Francis Occumed questionnaire. The questionnaire also asked if a doctor had ever restricted his activities or required him to miss time at work, and Donald wrote on the form, "Yes, back strain in car accidents." Plaintiffs also assert that Donald had been diagnosed with arthritis in 2007 or 2008, and that he considered the accident 10 or 12 years prior to be inconsequential because he had had no symptoms, pain or treatment for that accident or that diagnosis. For these reasons, Plaintiffs argue that Donald did not willfully deceive or make misrepresentations regarding prior injuries in an effort to obtain benefits.

La. R.S. 23:1208(A) provides that it shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation. La. R.S. 23:1208 authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. *Resweber v. Haroil Const.*

9

*Co.*, 94-2708 (La. 9/5/95), 660 So. 2d 7; *Griffith v. CMR Constr. & Maint. Res.*, 54,443 (La. App. 2 Cir. 4/13/22), 337 So. 3d 605, *writ denied*, 22-00781 (La. 9/20/22), 346 So. 3d 283. Forfeiture is a harsh remedy and must be strictly construed. *Wise v. J.E. Merit Constructors, Inc.*, 97-0684 (La. 1/21/98), 707 So. 2d 1214; *Griffith*, *supra*. An inadvertent and inconsequential false statement will not result in the forfeiture of benefits. *Id*. La. R.S. 23:1208 does not penalize any false statement, but only those willfully made for the purpose of obtaining benefits. *Resweber*, *supra*; *Griffith*, *supra*. The WCJ's finding or denial of forfeiture will not be disturbed on appeal absent manifest error. *Id*.

In regard to the issue of fraud, we find that the record supports the WCJ's decision and a reasonable factual basis existed to deny the fraud claim. There were no misrepresentations made willfully and for the purpose of obtaining benefits. We find no error in the WCJ's conclusion that Defendant failed to carry its burden of proof on this issue, and this assignment of error is without merit.

*Temporary Total Disability*

Defendant argues that the trial court erred in finding Donald is entitled to an award of TTD benefits. It contends that compensation for TTD benefits shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment. It asserts Donald was not temporarily, totally disabled because there was no causal connection between his insignificant event with the forklift and his disability. It blames Donald's advanced degenerative disc disease for his injury and claims that it existed long before September 10,

2019. It asserts that the medical evidence presented at trial indicates that the disease caused the injury and not the slip from the forklift.

Plaintiffs argue that they met their burden of proof that Donald had a compensable accident at work and that the injury warranted the award of TTD benefits to Donald's estate. They also argue the injury that resulted from the slip-and-fall on the forklift included an acute fracture of the right pedicle, as diagnosed by Dr. Anders. Dr. Anders's deposition testimony was that Donald was injured in the work-related accident at the lower lumbar sacral area, specifically the pedicle fracture, which was a new fracture never seen prior to the MRI. He stated it was "more probable than not" that the recent fall caused the pedicle fracture. Several of the physicians recommended that Donald not return to work.

La. R.S. 23:1221(1)(C) states:

> For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

To prove a matter by clear and convincing evidence, as required to establish entitlement to TTD benefits, means to demonstrate that the existence of a disputed fact is highly probable, i.e., much more probable than its nonexistence. *Taylor v. Hollywood Casino*, 41,196 (La. App. 2 Cir. 6/28/06), 935 So. 2d 293.

Whether a claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ. *Lewis v. Chateau D'Arbonne Nurse Care Ctr.*, 38,394 (La. App. 2 Cir. 4/7/04), 870 So. 2d 515. Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. *Lafayette Bone & Joint Clinic v. Louisiana United Bus. SIF*, *supra*.

The clear and convincing evidence shows that Donald suffered a work-related injury to his lower back that resulted in his inability to return to work as a senior forklift operator. Despite the fact that Donald was previously diagnosed with arthritis, the evidence of the MRI and its interpretation by his physicians showed the pedicle fracture that had not previously been identified before the accident at issue. For these reasons, we find Plaintiffs are entitled to the award of TTD benefits and this assignment of error is without merit.

*Credit for Health Insurance Payments*

Defendant argues that the WCJ erred in finding that it was not entitled to a credit for benefits paid by Donald's health insurance company. It claims it pled an offset in its answer to the disputed claim for compensation and submitted evidence showing that payments of a certain amount of Donald's expenses were made by his health insurer, Blue Cross Blue Shield

12

of Louisiana.[2]  It claims it attached medical bills from several of the doctors and stated that it was entitled to a credit.[3]

Plaintiffs argue in order for Defendant to obtain a credit for medical payments made, it had to prove that it contributed to the payment of Donald's health insurance premiums and the percentage of the premiums that it paid.  It must also prove that payment of a certain amount of Donald's medical expenses was made by a person other than Donald or a relative or friend of Donald.

La. R.S. 23:1212(A) states:

Except as provided in Subsection B, payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, or by Medicaid or other state medical assistance programs of medical expenses that are owed under this Chapter, shall extinguish the claim against the employer or insurer for those medical expenses. This Section shall not be regarded as a violation of R.S. 23:1163. If the employee or the employee's spouse actually pays premiums for health insurance, either as direct payments or as itemized deductions from their salaries, then this offset will only apply in the same percentage, if any, that the employer of the employee or the employer of his spouse paid the health insurance premiums.

---

[2]  Defendant's answer, paragraph 11, states as follows:

Pleading in the alternative if such be necessary, BERRY GLOBAL GROUP, INC. claim that in the event it is determined that DONALD JENSON is entitled to the payment of compensation benefits and/or medical expenses or other expenses pursuant to Louisiana's Workers' Compensation Act then, and in that event, Defendants are entitled to a credit or offset, whichever is applicable, pursuant to LSA-R.S. 23:1225, LSA-R.S.23:1212 and/or LSA-R.S. 23:1206 and for any unemployment benefits he received.

Paragraph 12 states:

In further answer, BERRY GLOBAL GROUP, INC., specifically avers that it is entitled to a credit for all prior payment of worker's compensation benefits and medical benefits paid by it and/or any other entity.

[3] The WCJ found that the record lacked sufficient evidence to prove Defendant's claim for these credits.

In a workers' compensation action, a claimant proves entitlement to reimbursement for incurred medical expenses by proving the amount of the expenses and that they were reasonably necessary for treatment of a medical condition caused by the work injury. *Spires v. Raymond Westbrook Logging*, 43,690 (La. App. 2 Cir. 10/22/08), 997 So. 2d 175, *writ denied*, 08-2771 (La. 2/20/09), 1 So. 3d 495. Following that, the burden shifts to the employer or his insurer to establish a defense to payment of the incurred medical expenses. *Id.* Under La. R.S. 23:1212, the employer may meet this burden by proving that the expenses were already paid by someone other than the employee, a relative or friend. *Id.* The employer must judicially assert his right to a credit and present evidence to support his entitlement. *Id.*

In *Smith v. Roy O. Martin Lumber Co.*, 03-1441 (La. App. 3 Cir. 4/14/04), 871 So. 2d 661, *writ denied*, 04-1311 (La. 9/24/04), 882 So. 2d 1144, the defendant contended it was entitled to a credit under La. R.S. 23:1212 for benefits which were expended under their Employee Benefit Trust. The WCJ refused to award a credit because there was no evidence put forth concerning the percentage funded by the defendant. The *Smith* court cited *Taylor v. Columbian Chemicals*, 32,411 (La. App. 2 Cir. 10/27/99), 744 So. 2d 704, stating that the employer or insurer seeking an offset under La. R.S. 23:1212 must prove the entitlement to and the amount of any credit. Failure to introduce this evidence is fatal to the offset. *Taylor*, *supra*.

In the case at bar, Defendant pled entitlement to the offset or credit pursuant to La. R.S. 23:1212 and provided copies of statements indicating that Donald's insurer, Blue Cross Blue Shield of Louisiana, paid for medical

14

services rendered after the accident. It did not provide the court with any evidence related to its payment of any premiums on Donald's behalf, or even proof of payment of a portion of the premium. It is unclear who paid the premiums for Donald's insurance; and, as the WCJ stated, the record is devoid of sufficient evidence to prove Defendant's claim to these credits. This assignment of error is without merit.

*Penalties and Attorney Fees*

Defendant argues that the trial court erred in awarding penalties and attorney fees in favor of Donald's estate. It contends that the Workers' Compensation Act negates an assessment of penalties and attorney fees if the claim is "reasonably controverted" or if nonpayment results from conditions over which the employer or insured has no control. It claims the WCJ granted penalties and attorney fees not because she found Defendant's actions unreasonable but, instead, simply because Donald was not paid benefits. It asserts it did not pay because there was an absence of proof an accident occurred after a review of the surveillance video; thus, it was reasonable for it to deny Donald's claim. It argues that there could be no finding that its actions were arbitrary and capricious; therefore, the awards of penalties and attorney fees were in error.

Plaintiffs cite La. R.S. 23:1310.9, which provides that the WCJ "shall assess the total cost of the proceedings to the party who has brought them or the party who has unreasonably denied payment of benefits." They then cite La. R.S. 23:1201(F), which discusses penalty and attorney fee assessments for failure to pay compensation or medical benefits. They assert that Defendant unreasonably denied payment of benefits from the date of

15

Donald's injury through the date of his death; and, thus, the assessment of penalties and attorney fees is warranted.

La. R.S. 23:1201(F) states in pertinent part as follows:

Except as otherwise provided in this Chapter, failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; . . .

(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault [.]

(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

The award of penalties and attorney fees in workers' compensation cases is essentially penal in nature and is intended to deter indifference and undesirable conduct by employers and insurers toward injured employees. *Tingle v. Page Boiler, Inc.*, 50,373 (La. App. 2 Cir. 1/13/16), 186 So. 3d 220. Penal provisions are strictly construed. *Id.* The WCJ's grant or denial of penalties and attorney fees under the workers' compensation statute is subject to manifest error review. *Id.*

The WCJ has great discretion in awarding or denying penalties and attorney fees. *Thomason v. Wal-Mart Stores, Inc.*, 37,520 (La. App. 2 Cir. 9/4/03), 852 So. 2d 1283, *writ denied*, 03-2774 (La. 12/19/03), 861 So. 2d 573. The WCJ's decision concerning whether to assess statutory penalties and attorney fees will not be disturbed

16

absent an abuse of discretion.  *Lewis v. Chateau D'Arbonne Nurse Care Center*, *supra*.  The provisions of La. R.S. 23:1201(F) permit for multiple penalties for multiple violations of compensation and medical benefits.  *Fontenot v. Reddell Vidrine Water Dist.*, 02-0439 (La. 1/14/03), 836 So. 2d 14.

To find that the employer or insurer reasonably controverted a claim, the WCJ must find that the payer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.  *Brown v. Texas-LA Cartage Inc.*, 98-1063 (La.12/1/98), 721 So. 2d 885; *Morris v. Rent-A-Ctr. Inc.*, 43,191 (La. App. 2 Cir. 4/30/08), 981 So. 2d 257.

That an employer is subjectively motivated to avoid paying workers' compensation benefits or that an employer loses a disputed claim is not determinative in the decision whether to impose penalties and attorney fees. *Williams v. Rush Masonry, Inc.*, 98-2271 (La. 6/29/99), 737 So. 2d 41.  For purposes of imposition of attorney fees for discontinuance of workers' compensation benefits, "arbitrary and capricious behavior" consists of willful and unreasonable action, without consideration and regard for the facts and circumstances presented, or of seemingly unfounded motivation. *Id.*  Whether a refusal to pay is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer or insurer at the time of its action.  *Id.*  The crucial inquiry is whether the employer had articulable and objective reasons for denying or discontinuing the benefits at the time it took that action.  *Id.*

17

While Defendant's argument is that the WCJ awarded penalties and attorney fees without making a finding that it was unreasonable in its failure to pay, the written judgment states that the penalties and attorney fees were assessed "for failure to pay indemnity benefits on behalf of Claimant." In the telephonic hearing held for the WCJ to give oral reasons for judgment, she stated that Defendant acted arbitrarily and capriciously in its denial of workers' compensation benefits to and on behalf of Donald. It was for that reason she imposed the penalties of $2,000 for its failure to pay indemnity benefits and $2,000 for failure to provide medical treatment and an attorney fee award of $10,000.

This court reviews judgments, not reasons for judgment, and it is clear, pursuant to the statute, that the WCJ awarded the penalties and attorney fees because she believed Defendant's failure to pay was unreasonable given the amount of evidence available from the physicians, who stated there was an injury that occurred as a result of the work-related accident. Donald's injury was severe enough that he did not return to work, and he continued to seek medical treatment, even though Defendant was not offering to support him during this time. The WCJ considered Defendant's action denying benefits to be unreasonable in light of the medical evidence submitted by Plaintiffs. Medical evidence being generated from the day of the accident indicated that Donald was actually injured.

Applying the manifest error standard of review, we find no error in the award of penalties and attorney fees by the WCJ; and this assignment of error is without merit.

**CONCLUSION**

For the foregoing reasons, the judgment of the Office of Workers' Compensation Judge in favor of Plaintiffs Rosie Jenson and the Estate of Donald Jenson is affirmed. Costs of this appeal are assessed to Defendant Berry Global Group, Inc.

**AFFIRMED.**

**ELLENDER, J.,** concurs in part and dissents in part.

I respectfully concur in part and dissent in part. I agree with the majority's assessment that Jenson proved, by a preponderance of the evidence, he sustained an accident arising out of and in the course of his employment, as required by La. R.S. 23:1031 (A). Although the incident, as captured on the surveillance video, is minor to the point of being nearly imperceptible, the WCJ could reasonably find that a slip and fall occurred on the resin-coated floor.

I also agree with the majority's holding that Berry Global did not prove a false statement was made willfully and for the purpose of obtaining any benefit or payment, as required by La. R.S. 23:1208 (A). The WCJ was entitled to find Jenson's failure to disclose an auto accident and a diagnosis of arthritis, events from a decade before the work-related accident, did not rise to the level of falseness and willfulness that would warrant forfeiture.

Further, I agree with the majority's conclusion that Jenson proved, by clear and convincing evidence, the accident caused an inability to engage in any employment or self-employment, as required by La. R.S. 23:1221 (1)(c). In light of the conflicting medical opinions, the WCJ was not plainly wrong to accept the view of Drs. Anders and Bailey, who treated Jenson as a patient, and Dr. Cain, who also found an injury and disability, over that of Dr. Mead, who examined him once for purposes of litigation.

Finally, I agree with the majority's treatment of the claim of credit for health insurance payments. Despite the firm evidence of how much Blue Cross paid to Drs. Anders, Bailey, and Cain, the statute limits the offset to "the same percentage, if any, that the employer * * * paid the health insurance premiums[,]" and the burden is on the employer to prove the

percentage. *Taylor v. Columbian Chemicals.*, 32,411 (La. App. 2 Cir. 10/27/99), 744 So. 2d 704. The record does not show that Berry Global offered any evidence in this respect.

However, I respectfully do not agree with the majority's treatment of penalties and attorney fees. Regrettably, the WCJ confused the issue by stating on the record that if "portions" of the medical record showed Jenson was unable to work, then "it's very likely that I will award penalties and attorney fees." This completely jettisons the element of R.S. 23:1201 (F) that disallows a penalty if the employer "reasonably controverted" the claim. The majority discusses the "arbitrary and capricious" standard that applies when benefits have been unjustly terminated, under R.S. 23:1201 (I) and *Williams v. Rush Masonry Inc.*, 98-2271 (La. 6/29/99), 737 So. 2d 41, but there was no termination of benefits in this case. What this record does show is a very minor workplace incident, some evidence of Jenson's failure to disclose prior injuries, and a medical opinion that his current condition predated the accident. In my view, this satisfies any normal standard of reasonably controverting a claim and the WCJ was manifestly erroneous in not reaching this conclusion. Berry Global's handling of this claim does not rise to the level of indifferent or undesirable conduct that would warrant the imposition of any penalty or attorney fee. *Salter v. DeSoto Parish Police Jury*, 54,982 (La. App. 2 Cir. 5/17/23), __ So. 3d __; *Harper v. Weyerhaeuser Co.*, 54,789 (La. App. 2 Cir. 11/16/22), 351 So. 3d 859.

For these reasons, I would affirm most of the judgment, but reverse the imposition of penalties and attorney fees.