MOORE, J.
[,The claimant, Kevin Tingle, appeals a judgment that rejected, in part, his claim for workers’ compensation indemnity and medical benefits, and, in full, his claim for dependent benefits, benefits while incarcerated, mileage and medical reimbursement, , and penalties and attorney fees. For the reasons expressed, we affirm in part, reverse in part and render.

Factual Background

Tingle, age 23, went to work for Page Boiler in late August 2013 as a general laborer or welder’s helper at an average weekly wage of $583.50. Page Boiler was performing a contract to clean refractory boilers at the Idaho Timber mill in Cous-hatta. On the morning of September 25, Tingle was standing on a 20-foot scaffold, scraping the inside wall of a three-story boiler. He placed his foot on, or was standing on, the “outrigger,” a support beam above and to the side of the scaffolding platform. He lost his footing and fell to the platform, landing on his back; his cousin-, who was working with him, kept him from falling to the bottom of the boiler. EMTs rope-lifted him out of the boiler, and he was airlifted from Christus-Coushatta. to LSU Health Sciences Center in Shreveport-.
At the LSU emergency room, nurses recorded that he had fallen about 4 feet onto the scaffold and was complaining of neck and back pain. However, an X-ray of his thoracic spine showed “no convincing evidencé of acute osseous injury” and his cervical CT scan was “grossly normal." LSU discharged him the same day, with advice to see his primary care physician.
Tingle went to his family doctor, Gregory Bell, on September 27, complaining of great pain; his mother, Stacy Tingle, told the doctor he could 12not even feed himself for the pain. ■ Seeing that the X-rays were negative, Dr. Bell referred Tingle to The Spine Institute of Louisiana, in Shreveport. Tingle retained counsel, who notified Page Boiler’s insurer, Argonaut, that he wished to select Dr. Pierce Nunley, of The Spine Institute, as his physician of choice.
*223 On October 14, Tingle was arrested for second degree battery. He testified that his mother’s next-door neighbor got drunk and tried to assault her, so he (Tingle) intervened; this arrest later resulted in a probation revocation. The next day, October 15, 2013, he filed this disputed claim for compensation, alleging that no benefits had been paid, and demanding his choice of physician, with' penalties and attorney fees.'
On October 21, Tingle went back to Dr. Bell, complaining of back and neck pain, but mostly of depression issues; he did not tell Dr. Bell about the affray with the neighbor a week earlier. On November 18, he came to the Christus-Coushatta emergency room with a lacerated right ring finger,, which he said happened when he was skinning a deer. He testified that he had not been out hunting, but was just skinning one his uncle shot.
Argonaut eventually approved Tingle’s choice of physician and he saw Dr. Nunley on December 2. He reported that he had fallen 7 or 8 feet off a scaffold and, notably, that he had no prior back injuries or pain. Dr. Nunley found some muscle spasms, moderate limitation of. motion from pain, and a mildly decreased extensor hallucis longus (L5) muscle, but otherwise Tingle’s back seemed normal. However, he gave Tingle a “no work” slip and ordered MRIs and an EMG.
|sOn December 4, counsel wrote Argonaut, demanding temporary total disability (“TTD”) benefits. . .
On January 15, 2014, Tingle returned to Dr. Nunley, who reviewed the test results, finding degenerative disc disease at C5-6, and annular tears at L5-S1 and L4-5 with well-hydrated discs. Dr. Nunley testified that because of the good hydration, the tears were “no major concern.” He also testified that an. annular tear can cause back pain, and 'that these probably resulted from the work-related fall. He felt Tingle’s injuries ¡were only to the soft tissue and would naturally heal; he placed him on light-duty work.
On February 19, Argonaut issued Tingle a compensation check for TTD covering the- 10-week period from December 5, 2013, to February 14, 2014. The next day, it began issuing weekly TTD .checks of $389.01. It never, however, issued any compensation for the 10-week period between the date of the accident, .September 25, and the effective date of the first payment, December 5,2013.
On June 4, 2014, the district court held á probation revocation hearing. Tingle was on probation for a 2008 conviction of criminal damage to property; the court revoked this because of the October 14, 2013, second degree battery of the mother’s' neighbor, and sent Tingle to jail. Argonaut immediately halted TTD benefits, pursuant to La. R.S. 23:1201.4, and formally notified the Office of Workers’ Compensation (“OWC”) of this fact on June 17. Tingle has received no further indemnity benefits.
Tingle was. released from jail on September 23, 2014. Counsel wrote to Argonaut, demanding reinstatement of benefits. He also advised that the |4bill from the LSU emergency room on the date of the accident had never been paid.
Tingle paid a final visit to Dr. Nunley on October 23, reporting that his pain was more focused in his lower back and worse than a year earlier, immediately post-accident. Dr. Nunley still thought the injury was to soft tissue only, would naturally heal, and Tingle could do light-duty work. In November 2014, counsel again wrote to Argonaut, reiterating all previous' claims and requesting reimbursement for certain pain prescriptions from the emergency room and Dr. Nunley, and mileage for his round trips to Dr. Nunley, his pharmacy *224 and physical therapist, and a round trip to LSU on the date of the accident.

Action in the OWC

The matter came to trial in January 2015, before WCJ Patrick Robinson. The parties stipulated that the accident was work-related- and that Tingle’s compensation rate was $389.01 a week.
Tingle was the only live witness. He testified as outlined above, insisting that the drop from the outrigger to the scaffold was 7½-8 feet, even though photos seemed to show the outrigger was about waist high. Tingle also testified that he was living with his mother and two minor brothers, for whom he was the sole financial support, even though he had been in jail for three years (2008-2011), and the only tax return he could find, 2013, showed he made $7,233 that year. He admitted that his choice of physician, Dr. Nunley, had placed him on light-duty status, but insisted that Page Boiler had no light-duty work.
LOn cross-examination, Tingle admitted that despite telling various healthcare providers that this was his first back injury, he actually had several: (1) a 2005 auto accident in which he was the backseat passenger in a car that was T-boned; (2) an April 2011 work-related injury from slipping on an oily floor; (3) a March 2012 injury from picking up aluminum siding (he insisted the hospital record of this was wrong, and it actually happened in 2002, when he was eight years old); and (4) a March 2012 auto accident in which he was the front-seat passenger in a.car that ran off the road at 75 mph and crashed into a tree (he claimed to have no recollection of this event). Even though he had gone to the hospital after each of .these incidents, he testified that none of them was “really major” and nothing ever “lasted this long.’.’
The parties also introduced a large amount of documentary evidence, chiefly medical records which are not directly relevant to the instant claim but show that in addition to back injuries and pain, Tingle had chronic problems with depression and suicidal thoughts.
Other documents showed that Argonaut paid (1) TTD each week from December 6, 2013, until Jpne 1, 2014; (2) .the medevac for the date of the accident; and (3) all of Dr. Nunley’s medical bills. However, it had not paid (1) the LSU bill for the date of the accident; (2) any of Dr. Bell’s bills; (3) three prescriptions or any of the mileage claimed by Tingle.
Depositions of Dr. Nunley and Dr. Bell were introduced, and. are summarized above, as well as depositions of Tingle’s cousin, Danny Lindsey, and mother, Stacy Tingle. However, the deposition of the cousin Lwlio actually witnessed the fall, Chris Mitchell, was not yet transcribed. WCJ Robinson held the record open for one week to allow Tingle to file this deposition; it was never filed.
While the case was under advisement, WCJ Robinson was appointed director of the Louisiana OWC. Tingle’s case was assigned to an ad hoc WCJ. On April 7, 2015, the ad hoc WCJ issued reasons for judgment. In the recitation of facts, the WCJ stressed the inconsistent account of how far Tingle actually fell; his history of bipolar disorder; the disconnect between Dr. Nunley’s benign diagnosis and Tingle’s complaints of debilitating pain; Tingle’s failure to report his prior back injuries, one of which-- was very serious; and Tingle’s fairly significant, criminal record. The WCJ stated that given this evidence, if the employer had pled fraud Under La. R.S. 23:1208, the court would have sustained that plea and ordered forfeiture of all benefits. Even though § 1208 was not at issue, the WCJ found that Tingle lacked credibility, offered only his self-serving *225 testimony of an ongoing disability, and failed to prove his injury lasted past June 1, 2014, when he was sent to jail. The WCJ denied any further TTD benefits. It also denied the claim for penalties and attorney fees, as well as the dependent claim of Tingle’s mother. The WCJ later signed a judgment dismissing all claims.
Tingle took this devolutive appeal, raising eight assignments of error.
Discussion: Beneñts After June 4, 2014
By his seventh assignment of error, Tingle urges the WCJ erred in finding that he failed to prove he was entitled to TTD benefits after June 4, 2014, the date he was sent to jail on the probation revocation. By his fourth ^assignment, he contends the WCJ erred in failing to rule on whether his dependents were entitled -to his disability benefits while he was incarcerated. He submits that the judgment is subject to de novo review because the ad hoc WCJ did not actually see or hear him on the witness stand. He also contends that manifest error occurred when the WCJ placed too much emphasis on his prior medical events, which do not disqualify a claimant from recovering for a subsequent work-related accident, Peveto v. WHC Contractors, 93-1402 (La.1/14/94), 630 So.2d 689. Accepting the claimant’s testimony, he argues, mandates a finding of a disability that continued past the termination date.
Factual findings in workers’ compensation cases are subject to manifest error review. Marange v. Custom Metal Fabricators Inc., 2011-2678 (La.7/2/12), 93 So.3d 1253; Dean v. Southmark Const., 2003-1051 (La.7/6/04), 879 So.2d 112. The manifest error standard applies even when a successor judge 'rules solely on the basis of a transcript. Shephard v. Scheeler, 96-1690 (La.10/21/97), 701 So.2d 1308; Haile v. City of Monroe, 31,315 (La.App. 2 Cir. 12/14/98), 722 So.2d 1192. There is no basis for de novo review of the factual findings in this case.
A claimant is entitled to TTD benefits if he sustains a work-related injury producing temporary total disability to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which he was customarily engaged when injured, and whether or not an occupation for which he was at the time of the injury particularly fitted by reason of education, training or experience. La. R.S. 23:1221(1)(a); Buxton v. Iowa Police Dept., 2009-0520 (La.10/20/09), 23 So.3d 275. When the claimant alleging TTD is not working, he must prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment, regardless of its nature or character, including any and all odd-lot employment, sheltered employment, or employment while working in pain. R.S. 23:1221(1)(c); Buxton v. Iowa Police Dept., supra; Billington v. General Motors Corp., 31,585 (La.App. 2 Cir. 2/24/99), 728 So.2d 966.
Disability may be proved by medical and lay testimony; the WCJ must weigh all the evidence, medical and lay, to determine if the claimant has met his burden of proof. Bolton v. Grant Parish School Bd., 98-1430 (La.3/2/99), 730 So.2d 882; Whatley v. Nabors Drilling USA 44,720 (La.App. 2 Cir. 11/12/09), 26 So.3d 253. Compensation may be awarded “only for such injuries as are proven by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself.” La. R.S. 23:1317 A; Taylor v. Tommie’s Gaming, 2004-2254 (La.5/24/05), 902 So.2d 380; Cheatham v. Luberski Inc., *226 43,603 (La.App. 2 Cir. 9/17/08), 996 So.3d 373. The WCJ may reject a claimant’s testimony when it is contradicted by documentary evidence, is internally inconsistent, or is implausible on its face. Iberia Med. Ctr. v. Ward, 2009-2706 (La.11/30/10), 53 So.3d 421; Daniel v. House of Raeford Farms of La., 44,753 (La.App. 2 Cir. 9/23/09), 23 So.3d 374, writ denied, 2009-2326 (La.1/8/10), 24 So.3d 871.
|9On close review we find no basis to disturb the WCJ’s finding that by June 4, 2014, Tingle was no longer entitled to TTD benefits. Of course, Tingle testified that he has not worked since this accident, owing to his back pain; his mother told Dr.- Bell, two days after the accident; that he could not even feed himself; a year after the accident, Tingle told Dr. Nunley the pain was worse than a. year earlier. However, an X-ray and CT scan taken the day of the accident showed no abnormalities; Dr. Nunley initially gave Tingle a “no work” slip but, by January 15, 2014, placed him on light duty, after reviewing MRIs and an EMG and concluding that any injury was merely to the soft tissue and would resolve itself; one year post-accident, Dr. Nunley again said that Tingle could perform light-duty work. No medical evidence refuted these objective findings. Some of Tingle’s post-accident conduct (cleaning a deer, even if not hunting, and jumping into a fight with a neighbor) seems inconsistent with the allegation that he was in debilitating pain. Finally, we agree with the WCJ’s assessment that Tingle showed an appalling lack of candor and honesty in failing to tell any healthcare provider about his serious history of back injuries. Simply put, Tingle’s testimony is refuted by objective findings, clouded by circumstantial evidence and tainted by poor credibility. There is no manifest error in the WCJ’s finding that Tingle was no longer entitled to TTD after June 4, 2014.
This conclusion obviates any need to discuss his claim for dependent benefits while incarcerated, under Lá. R.S. 23:1201.4. Even if Tingle were still entitled to benefits while in jail, he would have to prove he “has [independents who rely on a compensation award for their support[.]” R.S. 23:1201.4 A; Turner v. Sunbelt Mfg., 32,691 (La.App. 2 Cir. 6/14/00), 763 So.2d 770. Despite the testimony of Tingle’s mother that she and her other children relied on l)im “for everything,” there was no documentation of this support. In fact, the record shows that Tingle was in jail from 2008-2011, contributing nothing to the household, and earned a mere .$7,233 in 2013, the year of the injury. The WCJ did not abuse its discretion in finding insufficient evidence . to prove dependency. These assignments of error lack merit.

Other Benefits Prior to June 4, 2014

By three of his assignments of error, Tingle urges the WCJ erred in (1) failing to rule on whether he was entitled to TTD for the first 10 weeks post-accident, September 25 through December 5, 2013; (2) failing to rule on whether he was entitled to mileage and prescription benefits; and (3) finding that all outstanding medical bills, specifically the LSU emergency room bill from the date of the accident, had been paid. He submits the WCJ was “obviously incorrect” in failing to award these specific items.
Page Boiler responds, that Tingle proved, at most, a “minor injury” and, given his total lack of credibility, he failed to prove he was entitled to the first .10 weeks of TTD, mileage or prescription benefits, or any further medical expenses.
Page Boiler’s position does not, however, defeat the-specific claims raised by these assignments. The parties stipulated that *227 Tingle sustained a work-related accident on September 25, 2013. Regardless of the claimant’s In (admittedly serious) credibility problems, certain consequences flow from the occurrence of a compensable injury. The employer is required to . furnish “all necessary drugs, supplies, hospital care and services, medical and surgical treatment[.]” La, R.S. 23:1203 A. The employer is also liable for the “actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the employee in order to obtain the medical services[.]” La. R.S. 23:1203 D. If the employee proves TTD, the employer is required to pay indemnity benefits of 66⅜% of wages during such period of disability. La. R.S. 23:1221(1)(a).
A cursory review of this record shows that Argonaut never paid the LSU emergency room statement of $2,412.25, for services rendered to . Tingle on the date of the accident. There is absolutely no showing that this charge was unrelated to the. compensable accident. The WCJ was manifestly erroneous .in failing to award this, and the judgment will be amended accordingly. A cursory review also shows that Argonaut never paid for three of Tingle’s prescription drugs, two pain medications prescribed by an LSU emergency room doctor on the date of the accident and a muscle relaxant prescribed by Dr. Nunley on January 29, 2014, for a total of $39.20. Even though Dr. Nunley had released Tingle to resume light-duty work, this did not terminate the employer’s obligation to provide medicals. Graham v. Georgia-Pacific Corp., 26,165 (La.App. 2 Cir. 9/23/94), 643 So.2d 352; Price v. City of New Orleans, 95-1851 (La.App. 4 Cir. 3/27/96), 672 So.2d 1045, writ denied, 96-1016 (La.10/25/96), 681 So.2d 360. Page Boiler 112made no showing that these claims were unrelated to the compensable injury. The WCJ was manifestly erroneous in failing to award these, and :the judgment will be amended accordingly.
Tingle also claims mileage for his four round-trips to .Dr. Nunley in Shreveport; various trips to Mabile’s Corner Pharmacy, Matrix Therapy Solutions and Dr. Bell in Coushatta; and the round-trip to LSU Health Sciences Center on the date of the accident, totaling 671.88 miles. The depositions of Drs. Nunley and Bell confirmed that these trips were related to the compensable injury. Despite Tingle’s credibility issues, there was no medical evidence to refute the doctors’ opinion. The WCJ was manifestly erroneous in failing to award mileage. We note, however, that Tingle was carried by medevac from Christus-Coushatta to LSU Health Sciences Center on the date of the accident, an expense which . Argonaut paid. He is not entitled to round-trip mileage for this, only the return trip to his address on Brushy Creek Road in Coushatta, or 59.81 miles. This court will therefore amend, the judgment .to award the allowable mileage of 398.49 miles at the 2013 rate, of $0,565 per mile (=$225.15), and 213.58 miles at the 2014 rate of $0.56 per mile (=$119.60), for a total of $344.75..
A cursory review also shows that Argonaut never paid for the first 10 weeks after the accident,- essentially activating indemnity benefits only after Dr. Nunley gave Tingle the no-work slip on December 2, 2013. Notably, Dr. Nunley found annular tears at L5-S1 and L4-5 which “probably” resulted from the work-related fall. Although he felt Tingle’s injuries were to soft tissue only and would resolve in time, there is absolutely nothing in |iaDr. Nun-ley’s deposition to suggest that the soft-tissue injury was not disabling for the first 10 weeks after the accident, and Argonaut *228 offered no medical evidence to contradict Dr. Nunley’s opinion. The WCJ was manifestly erroneous in failing to award this period of TTD, totaling $3,890.10. The judgment will be amended accordingly. All' benefit claims are subject to judicial interest from th'e date they were due until satisfaction. La. R.S. 23:1201.3 A.'

Penalties and Attorney Fee

By his remaining three assignments of error, Tingle urges the WCJ erred in failing to (1) rule on whether the initial installment of TTD was timely, (2) rule on whether he was entitled to penalties and attorney fees for the various infractions alleged, and (3) award attorney fees incurred in bringing this action. Specifically, he shows that Argonaut’s first payment, covering the 10-week period that began December 5, 2013, was not issued until February 19, 2014, much more than 14 days after the employer had knowledge of the injury, La. R.S. 23:1201 B, and urges that this activated the penalty provision of § 1201 F. He also contends that a penalty is due for the failure to pay the LSU emergency room bill, the prescription and mileage, and the first 10 weeks of indemnity benefits.
Page Boiler responds that it reasonably controverted each of Tingle’s claims by showing the huge inconsistencies in his medical record, Halker v. American Sheet Metal, 2003-678 (La.App. 3 Cir. 12/10/03), 861 So.2d 740. It submits no penalty or attorney fee is due.
| uThe first installment of compensation payable for TTD is due on the 14th day after the employer or insurer has knowledge of the injury. La. R.S. 23:1201 B. Failure to provide this payment results in the assessment of a penalty of 12% of the claim or $50 per day unpaid, whichever is greater, but capped at $2,000 for each disputed claim, together with reasonable attorney fees. La. R.S. 23:1201 F. However, the penalty and attorney fee is not assessed if the claim is reasonably controverted • or if the nonpayment results from circumstances over which the employer or insurer had no control. La. R.S. 23:1201 F(2). To find that the employer or insurer reasonably controverted a claim, the WCJ must find that the payer “engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.” Brown v. Texas-LA Cartage Inc., 98-1063 (La.12/1/98), 721 So.2d 885; Morris v. Rent-A-Center Inc., 43,191 (La.App. 2 Cir. 4/30/08), 981 So.2d 257.
The award of penalties and attorney fees in workers’ compensation cases is essentially penal in nature, and is intended to deter indifference and undesirable conduct by employers and insurers toward injured employees. Iberia Med. Ctr. v. Ward, supra; Smith v. Quarles Drilling Co., 2004-0179 (La.10/29/04), 885 So.2d 562. Penal provisions are strictly construed. Iberia Med. Ctr. v. Ward, supra; Brown v. Offshore Energy Serv. Inc., 47,392 (La.App. 2 Cir. 8/8/12), 104 So.3d 494. The WCJ’s grant or denial of penalties and attorney fees under the workers’ compensation statute is | ^subject to manifest error review. Thomas v. Browning-Ferris Inc., 2004-1584 (La.2/25/05), 894 So.2d 1091; Brown v. Offshore Energy Serv,, supra.
The WCJ did not specifically address Tingle’s penalty claims. It found that he made misrepresentations that would have justified a total forfeiture of benefits under R.S. 23:1208, but correctly noted that Page Boiler never raised the affirmative defense of fraud so the court could not order forfeiture. Graham v. Nissan, 39,656 (La.App. *229 2 Cir. 6/29/05), 907 So.2d 213; Benoit v. Ace Transp., 10-371 (La.App. 3 Cir. 12/8/10), 51 So.3d 192, writ denied, 2011-0014 (La.3/25/11), 61 So.3d 663. In lien of this remedy, the WCJ simply denied all penalty claims.
This court is constrained to find that Tingle’s misrepresentations to healthcare providers and overall poor credibility had no bearing on the employer’s duty to- pay the first 10 weeks of TTD or to provide medical and pharmacy expenses related to the compensable injury. The WCJ’s failure to consider these claims was manifest error.
On close examination, this record does not show that Page Boiler or Argonaut reasonably controverted Tingle’s claims for the first 10 weeks of TTD, the LSU emergency room bill or the pharmacy expenses. They presented no medical evidence to counter Dr. Nunley’s assessment that Tingle was unable to work as of December 2, 2013, and was still suffering from some pain by January 2014. The record also shows that Tingle properly demanded these expenses on January 21, February 5 and September 23, 2014. A penalty of $2,000 for each failure to pay á claim hflWill be assessed. No penalty is assessed for the mileage claim, as the number of miles alleged was incorrect and the demand did not include a proper'dollar amount.
We also assess a reasonable attorney fee of $5,000 to cover litigating and appealing the refusal to pay the first 10 weeks of indemnity benefits, the LSU emergency room bill, pharmacy and mileage claims. Judgment will be rendered accordingly. Penalty and attorney fee awards are subject to judicial interest from the date of this judgment. Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382; Hendrick v. Patterson, 47,668 (La.App. 2 Cir. 1/16/13), 109 So.3d 475, writ denied, 2013-0670 (La.4/26/13), 112 So.3d 849.

Decree

For the reasons, expressed, -the judgment is affirmed insofar as it found Tingle was entitled to TTD from December 5, 2013, through-June 5, 2014, and discontinued benefits as of that date.
The judgment is reversed insofar as it denied, other items, and judgment is rendered in favor of the claimant, Kevin Tingle, against the defendant, Page Boiler, as follows: ■
TTD benefits 9/25/13-12/5/13
(10 weeks @ $389.01) ' 3,890.10
LSU Health Sciences Center 2,412,25
Mabile’s Corner Pharmacy 39.20
Mileage
(398.49 mi. @ $0.565)' 225.15
(213.58 mi. @ $0.56) 119.60
Penalties .. 6,000.00
Attorney Fee ‘ ’ 5,000.00
TOTAL: $17,688.30
|17The TTD'benefits, medical, pharmacy and mileage awards shall bear judicial interest from the date they were due until satisfaction; the penalty and attorney fee shall bear judicial interest from the date of this judgment until paid. Costs of this appeal are assessed one-half to the claimant and one-half to the employer.
AFFIRMED IN PART, REVERSED IN PART; RENDERED: