Judgment rendered February 8, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,796-WCA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JAMECIA S. MAYES                                Plaintiff-Appellee

versus

MOREHOUSE PARISH SCHOOL                Defendants-Appellants
BOARD AND LUBA CASUALTY
INSURANCE COMPANY

* * * * *

Appealed from the
Office of Workers' Compensation, District 1-E
Parish of Morehouse, Louisiana
Trial Court No. 19-08442

Honorable Brenza Irving Jones, Judge

* * * * *

THE ANZELMO LAW FIRM                      Counsel for Appellants
By: Donald J. Anzelmo
        Benjamin David Jones

PARHMS LAW FIRM LLC                       Counsel for Appellee
By: Carlton L. Parhms

* * * * *

Before PITMAN, COX, THOMPSON,
HUNTER, and MOORE (*Ad Hoc*), JJ.

HUNTER, J., dissents with written reasons.

**MOORE, J. (*Ad Hoc*)**

The Morehouse Parish School Board and its workers' compensation insurer, LUBA Casualty Insurance Co., appeal a judgment in favor of the claimant, Jamecia S. Mayes, which awarded Ms. Mayes approximately two additional years of temporary, total disability benefits, plus a penalty and attorney fee for arbitrary and capricious conduct. For the reasons expressed, we reverse and render.

## FACTUAL BACKGROUND

Ms. Mayes was an English and math teacher at Bastrop High School, a part of the Morehouse Parish School Board ("MPSB"). On campus on January 16, 2019, she heard a noise in the hall, went to see what the problem was, and found two female students fighting. Ms. Mayes grabbed the smaller of two, another school employee grabbed the taller one, and Ms. Mayes started walking the smaller student toward the school office. The larger student, however, broke away, ran up behind Ms. Mayes, and attempted to strike the smaller student. These blows landed on Ms. Mayes, who was standing between the two.

Ms. Mayes described being "repeatedly beaten from the back," with "blows to [her] head and face," causing her to fall forward and land on the floor. Another teacher, Ms. Peoples, who was standing right next to the action, testified that there were only two blows, which "grazed" Ms. Mayes's head and shoulder, and she never fell to the ground. Another teacher, Coach Tribble, arrived after the punching, and testified that Ms. Mayes was not on the ground and, in fact, walked normally to the school office. Although her memory was hazy, Ms. Mayes testified that she made it to the office and that the principal, Mr. Broussard, drove her to Morehouse

General Hospital. Principal Broussard, however, testified that he did not drive her there. He also testified that he watched a security video of the incident; on this, he saw the student take two swings at Ms. Mayes, and could not tell if either made actual contact. He also said that Ms. Mayes definitely did not hit the floor.[1]

At Morehouse General, Ms. Mayes told nurses she had been struck in the head, face, and cheek about four times and was unsure if she fell to the floor. A CT scan of her head and cervical spine was normal; she was diagnosed with a sprain of her joints and ligaments, and myalgia, and discharged. However, she testified that she was still in much pain, with frequent headaches, increasing neck pain, and back spasms.

Eight days later, on January 24, she went to Dr. J.D. Patterson, a family practitioner in Monroe, complaining of headaches, neck, hip, and shoulder pains. He diagnosed cervical, thoracic, and sacral muscular strain, left hip and upper arm muscular strain, and, notably, acute anxiety. He prescribed anti-inflammatories and therapy, but after two subsequent visits without much improvement, he referred Ms. Mayes to Dr. Timothy Spires, an orthopedist in Monroe.

Ms. Mayes went to Dr. Spires on March 19, telling him that the student's blows had caused her to fall on her face. She reported that her pain had improved but still was interfering with her daily life; she described nightmares and recurrent memories of the incident, and said she did not feel safe going back to BHS. Dr. Spires diagnosed cervicalgia and sprains of the ligaments of the cervical and other parts of the spine. He gave her a steroid

---

[1] The security video was not introduced in evidence.

injection, recommended counseling, and took her off work "pending reassessment."

Ms. Mayes attended physical therapy sessions in April and May 2019, with the therapist noting general improvement but lingering complaints of neck pain. She also made follow-up visits to Dr. Spires, who noted gradual improvement and again recommended that she get counseling.

On August 2, 2019, Dr. Spires found her physical exam normal and released her to return to work, with sitting breaks as needed. After receiving this notice, MPSB told Ms. Mayes to return to work and ended her wage and workers' comp benefits as of August 2. She then returned to BHS. She paid a subsequent visit to Dr. Spires on September 6, still complaining that she was not doing any better, had quit PT sessions "for financial reasons," and was having panic attacks. Dr. Spires again told her that she was released to work.

At the trial of this matter, Ms. Mayes testified that 10 days later, on September 16, she entered the ladies' restroom by the teacher's lounge at BHS, went to open one of the stalls, but the door came off its hinges and struck her on the forehead. She offered in evidence photos showing a knot on her forehead and a small cut.[2] A BHS custodian, Ms. Vance, testified that the stall doors opened by being pushed in, not pulled out, and that this door was "halfway slanting" off its hinges at the time. Nonetheless, Ms. Mayes went directly to Morehouse General Hospital, where a CT scan showed no acute infarct or hemorrhage, and nurses noted a superficial laceration with no active bleeding. She was discharged in "good condition." Ms. Mayes also

---

[2] Ms. Mayes did not allege this incident in her disputed claim for compensation.

testified that she went to Forsythe Family Medical Clinic, a clinic in Monroe where her friend Ms. Hamby was the nurse practitioner, but the clinic's records do not show any visit on September 16.[3]

Four days later, September 20, Ms. Mayes went back to Dr. Spires, reporting that a broken door fell off its hinges, hit her in the face, and gave her a concussion. She also told him she was having nightmares about returning to work; Dr. Spires told her to stay off work. On a subsequent visit, she said she could not get out of bed because of the pain, and he again took her off work. In late October, she went back to Forsythe Family Medical Clinic, where she often went for colds and sinus issues. This time she complained of low back pain, left shoulder pain, and neck stiffness. The nurse practitioner referred her to Dr. Douglas Brown, an orthopedic surgeon in West Monroe.

Ms. Mayes went to Dr. Brown on November 5, relating the two incidents, which the doctor labeled a "confusing history." She reported pain in her neck, left arm and shoulder, right wrist, and lower back, increasing with virtually any physical activity. Dr. Brown ordered an MRI and EMG; the radiologist declared the MRI "normal," with some bulging at L3-4 and L5-S1, and annular bulging at C4-5, C5-6, and C6-7. He advised more physical therapy and continued Ms. Mayes's work restrictions.

### PROCEDURAL AND SUBSEQUENT HISTORY

Ms. Mayes filed this disputed claim for compensation on December 23, 2019, against MPSB and its insurer, LUBA (collectively, hereafter, "MPSB"). She alleged only the incident of January 16, 2019, in which she

---

[3] Ms. Mayes also did not call Ms. Hamby to testify.

"attempted to break up the fight and was injured." She did not mention the bathroom stall incident and did not claim any mental disability. She alleged that her wage benefits had been terminated in June 2019, and demanded penalties and attorney fees, together with her choice of neurosurgeon.

MPSB admitted Ms. Mayes's employment status, the occurrence of a work-related accident on January 16, 2019, and the payment of benefits until she was released to return to work. It asserted that her disability was only temporary and had resolved.

Ms. Mayes went to her choice of orthopedist, Dr. Joseph Boucree, in Slidell, La., in April 2020. She related both the fight incident and the bathroom stall incident, and told him that months of therapy and over-the-counter medications had not helped; still, she was "highly motivated" and returned to work, but the second incident had left her dazed, disoriented, and confused. Dr. Boucree diagnosed spondylolisthesis and disc herniation at C4-5, and herniations and stenosis at various other levels. He recommended a discectomy and fusion at C4-5 and steroid injections. Ms. Mayes testified that she has not undergone either treatment.

Finally, Ms. Mayes requested examination by a neurosurgeon, Dr. Bernie McHugh, in Monroe, and LUBA approved it. She told Dr. McHugh that all her symptoms began with the fight incident, that she had no similar symptoms or injuries prior to that time, and that she had been terminated from MPSB in February 2020. Dr. McHugh noted her complaints of pain, but found that the MRIs showed only mild disc degeneration which did not need surgery. Instead, he found her "most significant debilitating factor is her severe anxiety and posttraumatic stress." He found no limitations to her returning to work.

5

Trial took place in June 2021. In addition to the facts outlined above, Ms. Mayes testified that she is unable to work because of her back pain; she has anxiety and trouble sleeping; she cannot drive the way she used to, or stand for long periods of time; and she had never had prior injuries to her neck, back, or shoulders.

On cross-examination, she admitted that her accounts of the fight incident and bathroom stall incident differed from those other witnesses, and that some of her statements to healthcare providers may have been inconsistent. In response to her claim of being completely pain-free before these events, MHSB produced medical records from St. Francis Medical Center, in Monroe, showing that she had been there with back pain four times between 2010 and 2015.

Ms. Mayes also testified that in addition to teaching, she owns a consulting company, Jamie Mayes Educational Consulting and Literacy Services LLC, and is an author and motivational speaker. Although her presentations in 2020 were virtual only, she admitted that about a month before trial she had driven from Monroe to Zachary, La., and from there ridden with friends to New Orleans to present three live sessions at an education conference, which were well attended.

The other witnesses included Ms. Peoples, Principal Broussard, Mr. Tribble, and Ms. Vance, whose testimonies were noted earlier.

## ACTION OF THE COURT

After taking the case under advisement, the workers' compensation judge ("WCJ") recapitulated the testimony, noting the inconsistencies between Ms. Mayes's account of the incidents and that of MPSB's witnesses. Those witnesses "certainly caused this Court to question the

6

credibility and veracity of Claimant's version of the accident." However, to resolve the dilemma, "the medical evidence must be perused." The court then summarized the records from Morehouse General, and Drs. Patterson, Spires, Brown, Boucree, and McHugh. The WCJ rejected any claim for mental disability, as Ms. Mayes had not requested it in her disputed claim and her consulting business refuted any such finding.

The WCJ then found that the "objective" results of the physical examinations mandated a conclusion that Ms. Mayes was entitled to physical therapy and pain care. "Based on the findings of her physicians," the WCJ awarded her weekly indemnity benefits through August 2, 2019 (when Dr. Spires released her to return to work), and again from September 20, 2019 (when Dr. Spires found her unable to work) until May 4, 2021 (when Dr. McHugh released her to return to work), a total of $53,614.85. This was subject to a credit for the salary or compensation Ms. Mayes received as a consultant during those times, or $5,429.00. Finally, the WCJ found that MPSB's decision to ignore the findings of Drs. Spires and Brown was arbitrary and capricious. The WCJ imposed a penalty of $2,000 and attorney fee of $5,000.

MPSB appealed suspensively, raising three assignments of error.

### APPLICABLE LAW

An employee is entitled to workers' compensation benefits if she "receives personal injury by accident arising out of and in the course of" her employment. La. R.S. 23:1031 A. The claimant has the burden of proving, by a preponderance of the evidence, that the disability is related to an on-the-job injury. *Buxton v. Iowa Police Dept.*, 09-0520 (La. 10/20/09), 23 So. 3d 275. Disability may be proved by medical and lay testimony; the WCJ

7

must weigh all the evidence, medical and lay, to determine if the claimant has met her burden of proof. *Bolton v. Grant Parish Sch. Bd.*, 98-1430 (La. 3/2/99), 730 So. 2d 882; *Tingle v. Page Boiler Inc.*, 50,373 (La. App. 2 Cir. 1/13/16), 186 So. 3d 220. A claimant's testimony alone may be sufficient to establish an accident provided that "(1) no other evidence discredits or casts serious doubt upon the worker's version of the incident, and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." *Bruno v. Harbert Int'l Inc.*, 593 So. 2d 357 (La. 1992); *Brown v. Offshore Energy Serv.*, 47,392 (La. App. 2 Cir. 8/8/12), 104 So. 3d 494.

Factual findings in a workers' compensation case are subject to the manifest error rule. *Buxton v. Iowa Police Dept.*, *supra*. The reviewing court is not permitted to reweigh the evidence or reach its own factual conclusions from the record. *Marange v. Custom Metal Fabricators Inc.*, 11-2678 (La. 7/2/12), 93 So. 3d 1253. However, compensation may be awarded "only for such injuries as are proven by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself." La. R.S. 23:1317 A; *Taylor v. Tommie's Gaming*, 04-2254 (La. 5/24/05), 902 So. 2d 380. The WCJ may reject a claimant's testimony when it is contradicted by physical or documentary evidence, is internally inconsistent, or is implausible on its face. *Iberia Med. Ctr. v. Ward*, 09-2705 (La. 11/30/10), 53 So. 3d 421. The weight to be given to an expert's testimony depends on the expert's qualifications and experience and especially on the facts on which that expert's opinion is based; the validity of the underlying facts relied by the expert is crucial. *Davis v. Sweeney*, 44,997 (La. App. 2 Cir. 3/3/10), 31 So.

3d 1184; *McDonnell v. Brammer Mach. Shop Inc.*, 22-116 (La. App. 3 Cir. 10/19/22), 349 So. 3d 1151.

**DISCUSSION**

By its second assignment of error, MPSB urges the WCJ erred in finding that Ms. Mayes met her burden of proving that her alleged injuries were caused or aggravated by an on-the-job injury. It contends that her testimony was repeatedly contradicted by other eyewitness testimony and physical evidence, and her healthcare providers based their opinions on her false representations regarding the two incidents. After close review of the record, we are constrained to agree.

The details of the fighting incident, and the severity of its effects, were seriously disputed at trial. Ms. Mayes claimed that she was struck about the head and face with multiple hard blows, knocked to the ground and dazed to the extent that she could not recall the events shortly afterward. However, the other witnesses described only two blows, glancing if they made contact at all, no fall to the floor, and no apparent disorientation. On the date of the incident, medical personnel at Morehouse General declared her in "good condition," her CT scan showed only normal cervical changes, she was diagnosed with a sprain, and she was discharged without any medication. Two months later, when she first went to Dr. Spires, she gave a history of being hit so hard she fell and landed on her face; owing to her continuing complaints of pain, he kept her off work until early August. This troubling history led the WCJ to "question the credibility and veracity" of Ms. Mayes's testimony. The skepticism was warranted.

To resolve the credibility question, the WCJ turned to the medical evidence, but failed to consider the patient history and other facts on which

9

the medical experts based their opinions. After the bathroom stall incident, Ms. Mayes went to Morehouse General, where personnel diagnosed a superficial laceration, no active bleeding, no evidence of acute infarct or hemorrhage, and discharged her in "good condition." She claimed to have also visited Forsythe Family Medical Clinic the same day, but produced no evidence of this. Four days later, she returned to Dr. Spires telling him that she had sustained a *concussion* in the incident; three months later, she repeated the concussion claim to Dr. Brown. Some months later, when she went to Dr. Boucree, she told him that the bathroom stall struck her in the head, made her "fall backwards," caused a laceration that required Dermabond, and gave her lack of balance and coordination. Obviously, the only contemporaneous report, from Morehouse General, records none of the alarming conditions that Ms. Mayes later reported to doctors. The photos show a bump on the forehead and a very minor laceration, barely breaking the skin, and corroborate the Morehouse General report. No medical evidence showed any diagnosis of concussion, but this is what she repeatedly told Drs. Spires, Brown, and Boucree. In our view, those doctors' opinions of Ms. Mayes's condition after the bathroom stall incident were not reliable enough to support the WCJ's conclusion.

The record presents other credibility problems as well. Ms. Mayes maintained that she had suffered no back and neck problems before the fighting incident, but the voluminous records from St. Francis Medical Center disclosed four prior visits for auto accidents, two of which involved her upper back and neck, in 2011 and 2015. Ms. Mayes testified that these were "a long time ago," but forgetting them was unlikely, as EMS were called, she was extricated by logroll maneuver, she had X-rays and a CT

10

scan, and she was diagnosed with "lower back injury/fracture." In short, the documentary evidence contradicts the claimant's account. It also shows the claimant's tendency to amplify events and enhance symptoms.

A final fact that compels our finding of manifest error is the overwhelming evidence that Ms. Mayes's alleged disability is psychological. On her first visit, Dr. Spires noted her fear of returning safely to work, her frequent nightmares and recurring memories of the fighting incident; he later recommended "addressing the psychological issues." The nurse practitioner at Forsythe Family Clinic found her main diagnosis was "major depressive disorder, single episode, episodic," with "PTSD, unspecified." Later, Dr. McHugh reported, "The patient's most significant debilitating factor is her severe anxiety and posttraumatic stress. We recommend referral to Psychiatry for treatment." To the extent that the medical evidence supports a finding, it would be that any disability is psychological, and not the physical consequences of the two work-related incidents described by Ms. Mayes.

The WCJ was not plainly wrong to identify the claimant's serious credibility issues. However, she was manifestly erroneous to use the medical records, which relied on the same unreliable reporting, to resolve the credibility question. We are constrained to hold that the WCJ's finding of temporary, total disability after August 2, 2019, is plainly wrong. The judgment is reversed.

By its third assignment of error, MPSB contests the award of penalties and attorney fees. When the claimant fails to prove her entitlement to benefits, there is no award of attorney fees or penalties under La. R.S.

11

23:1201. *Poissenot v. St. Bernard Parish Sheriff's Ofc.*, 09-2793 (La.

1/19/11), 56 So. 3d 170. This portion of the judgment is also reversed.[4]

## CONCLUSION

For the reasons expressed, the judgment is reversed and the claim is

dismissed. All costs are to be paid by the claimant, Jamecia Mayes.

**REVERSED AND RENDERED.**

---

[4] We pretermit any consideration of MPSB's first assignment of error, which contested the admissibility of evidence regarding the bathroom stall incident.

**Hunter, J., dissenting.**

I respectfully dissent from the majority's decision to reverse the judgment of the workers' compensation judge ("WCJ").

Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Stobart v. State, Dept. of Transp. & Dev.*, 617 So. 2d 880 (La. 1993). Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.* "[I]f the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Housley v. Cerise*, 579 So. 2d 973 (La. 1991) (*quoting Sistler v. Liberty Mutual Ins. Co.*, 558 So. 2d 1106, 1112 (La. 1990). The manifest error standard applies even when the WCJ's decision is based on written reports, records, or depositions. *Bruno v. Harbert International, Inc.*, 593 So. 2d 357 (La. 1992); *Trejo v. Canaan Construction, LLC*, 52,697 (La. App. 2 Cir. 6/26/19), 277 So. 3d 499; *Harris v. City of Bastrop*, 49,534 (La. App. 2 Cir. 1/14/15), 161 So. 3d 948.

The majority has pointed out the internal inconsistencies in Ms. Mayes' testimony, while ignoring the inconsistent testimony of the other witnesses. Ms. Peoples initially testified the student "kind of grazed" Ms. Mayes. However, during cross examination, she testified the student "punched" Ms. Mayes with her fist at least two times. She also testified she saw someone fall to the ground; however, she "believed" it was the student, not claimant, who fell to the ground. Mr. Broussard did not witness the

fight. Yet, according to Mr. Broussard, he watched a video recording of the incident, and the student approached Ms. Mayes from behind and "started swinging." He testified he observed Ms. Mayes' "momentum move forward," and he "assumed she got hit." Nevertheless, he claimed he was unable to ascertain whether the strike was a "good flush" or a "graze."

Historically, this Court has recognized the great deference afforded to the factual findings of the trier of fact. It is our duty to objectively review the findings in light of the entire record to determine whether the WCJ committed manifest error. After reviewing the record in this case, I believe the WCJ's findings were reasonable. Consequently, I can only conclude the WCJ did not manifestly err in concluding Ms. Mayes is entitled to benefits, penalties, and attorney fees.

I would affirm the decision of the WCJ.